In the Matter of the Application of MARY A. O'CONNOR, Appellant, against EDWARDS D. EMERSON and Others, Constituting the Board of Education of the City of Buffalo, Respondents, for a Writ of Mandamus.

Fourth Department, May 4, 1921.

**Schools — jurisdiction of mandamus proceedings to restore principal of school to her position after dismissal during probationary period — board of education not estopped from showing clerical error in minutes — distinction between position of teacher and principal — Education Law, § 872, construed — teacher appointed as principal must serve probationary period and is removable without hearing during that period — removal of teacher not affecting her right to share in retirement fund.**

Where the rights of a school teacher depend upon the interpretation of a statute and it is claimed that a school board or official has proceeded to act in violation of an express statute and thereby the teacher complaining is being deprived of valuable rights, the courts have jurisdiction to determine the matter, though the parties might have appealed to the Commissioner of Education under section 890 of the Education Law.

In mandamus proceedings to compel the board of education of the city of Buffalo to restore the relator to her position as principal on the ground, among others, that at the time of her dismissal without hearing she had served a probationary period of one year, it was proper to permit the defendant to show that a date in the minute book which would make the probationary period one year was erroneously entered and was a clerical mistake in copying, and that at the time of the relator's appointment the required probationary period was two years.

The positions of teacher and principal are entirely distinct and are so recognized by subdivision 1 of section 872 of the Education Law.

That part of section 872 of the Education Law which provides that teachers who have served the full probationary period shall hold their positions during good behavior, and efficient and competent service, and shall not be removable except for cause after a hearing, is in derogation of the common-law right of contract on the part of the public authorities in engaging teachers, and should be strictly construed.

Under subdivision 1 of section 872 of the Education Law a teacher who has served a probationary period as such, must on her appointment as principal serve another probationary period as principal and is subject to removal without hearing at any time before the termination of such period.

Such a removal of a teacher will not affect her right to share in any retirement or pension funds to which she has contributed.

APPEAL by the relator, Mary A. O'Connor, from an order of the Supreme Court, made at the Erie Special Term and entered in the office of the clerk of the county of Erie on the 23d day of November, 1920, denying a writ of mandamus to reinstate the relator as principal of public school No. 25 of the city of Buffalo.

*George H. Kennedy*, for the appellant.

*William S. Rann* [*John E. Livermore* of counsel], for the respondents.

DAVIS, J.

The appellant, Mary A. O'Connor, on February 1, 1898, was appointed by the superintendent of education a teacher in one of the public schools in the city of Buffalo, and has continued in the service until during the past year.

On June 28, 1915, she tried an open, competitive examination for the position of principal and was placed on the eligible list of principals under the rules and ordinances of the board of education. On October 29, 1918, upon recommendation of the superintendent of schools, the board of education appointed her principal of grammar school No. 25, and she assumed those duties on October 31, following, and continued until October 11, 1920, when the board of education, upon the recommendation of the superintendent, discontinued her services as principal "on the grounds of unsatisfactory service as principal and indisposition to co-operate harmoniously with the other members of the department."

No charges were preferred against her, and there was no hearing, but the board of education asserted the right to take such action on the ground that her appointment as principal was for a probationary period of two years, pursuant to subdivision 1 of section 872 of the Education Law and the rules and regulations adopted by the board of education on January 21, 1918, which provided for such probationary period.

The appellant, claiming that her dismissal was without authority of law and that her tenure of office became fixed and she was subject to removal only when charges were made and established after a hearing, petitioned the court at Special Term for a writ of peremptory or alternative mandamus to compel the board to reinstate her as principal. Her contention is, in brief, that she has already served a probationary period as teacher, and that there is no distinction between the office of teacher and principal, and that there was no authority in the law for a new and additional period of probation when she was appointed principal, and that her appointment was, therefore, permanent when made; and that even if there were such probationary period, the rules and regulations adopted by the board of education provided for only a probationary period of one year as principal at the time she was appointed, and that period had expired before her appointment was revoked or her services dispensed with by the action of the board.

On the other hand, the respondents claim that the court is without jurisdiction and the remedy of the appellant is by an appeal to the Commissioner of Education, who has exclusive jurisdiction to determine the rights of the parties; that the probationary period had in fact been established at two years prior to her appointment, although by a clerical error in the minutes it appeared in the records as though the probationary period was but one year; and that there is a distinction both in the Education Law and in the policy of the board of education in the office of principal and teacher.

(1) We will first determine the question of jurisdiction. By the provisions of section 890 of the Education Law (formerly section 880, but renumbered by chapter 252 of the Laws of 1918) any person conceiving himself aggrieved may appeal or petition to the Commissioner of Education, who was

authorized and required to examine and decide the controversy in certain specified cases. Very likely the appellant might have taken an appeal from the action of the board to the Commissioner of Education under subdivision 7 of the section just quoted, and obtained from him a binding decision. The authority and jurisdiction of the Commissioner of Education are exclusive in all matters relating to the supervision and control of the public school system, the discipline of the schools and the management of the school property, and the authority and discretionary acts on the part of officers or agencies of education. (*People ex rel. Walrath* v. *O'Brien*, 112 App. Div. 97; *Bullock* v. *Cooley*, 225 N. Y. 566, 577; *Welker* v. *Lathrop*, 210 id. 434; *People ex rel. Board of Education* v. *Finley*, 211 id. 51; *Barringer* v. *Powell*, 230 id. 37.)

But where the right of a party depends upon the interpretation of a statute and it is claimed that a school board or official has proceeded to act in violation of an express statute, and thereby the party complaining is being deprived of valuable rights, the courts will not be ousted of jurisdiction to determine the matter, notwithstanding another method of settling the controversy has been provided. (*People ex rel. Stanley* v. *Van Siclen*, 43 Hun, 537; *People ex rel. Hylan* v. *Finegan*, 227 N. Y. 219; *People ex rel. Peixotto* v. *Board of Education*, 212 id. 463; *Matter of Hirshfield* v. *Cook*, 227 id. 297; *Matter of McCarthy* v. *Board of Education*, 106 Misc. Rep. 193; revd. on other grounds, 188 App. Div. 930.)

(2) It appears that prior to January 1, 1916, the ordinances of the city of Buffalo in effect relative to the department of public instruction, provided for a one-year probationary period, and prior to January 1, 1918, a two-year probationary period was in effect. By the provisions of section 872 of the Education Law, as added by chapter 786 of the Laws of 1917, a probationary period was provided of not less than one year and not to exceed three years, such period to be fixed by the board of education in its discretion. On January 21, 1918, the board of education adopted a resolution continuing in force the ordinances in effect prior to January 1, 1918, until the board of education should adopt a manual of rules and regulations or by-laws for the administration of the board and the department of education. In copying the typewritten

resolution into the minute book, " January 1, 1918," was made to read " January 1, 1916." The original typewritten resolution was on file, and the affidavits of the clerk who made the copy, and of the secretary of the board established that the date in the minute book was a clerical error. But the appellant insists that regardless of the fact, the board must be bound by the record erroneously copied in the book, and is estopped from asserting now that the period of probation at the time she was appointed was for a period of two years. Her position is entirely untenable. She does not show that she acted, in taking the position, in any reliance upon the erroneous minutes, and even if she had it would be a very doubtful legal policy to apply the doctrine of estoppel to a public body where the basis was a clerical error of the kind stated.

(3) The important question to be determined is as to whether or not a probationary period for principal has been legally established, giving the right to the board after the test of experience, to dispense with the services of a person as principal without resorting to the unsatisfactory method of preferring charges.

This question involves the consideration of whether or not there is a distinction between the office of teacher and principal. If there is none, then the appellant has already served a probationary period, and the change is merely a promotion in position and pay, and she still remains a teacher.

The only definition of teacher given by statute is that found in section 1100 of the Education Law, which now is inclusive of every person employed in the conduct of the schools, from a school librarian to the superintendent. (See Education Law, § 1100, added by Laws of 1911, chap. 449, as amd. by Laws of 1913, chap. 511, and Laws of 1919, chap. 103; repealed on August 1, 1921, by Laws of 1920, chap. 503, adding to Education Law, art. 43-B, in place of Education Law, art. 43-B, added by Laws of 1911, chap. 449, as amd.) This is obviously for the express purpose of determining who shall be eligible to the " State Teachers' Retirement Fund," and is a generic term not applicable to the present case. Elsewhere in the statute, superintendents, principals and teachers are spoken of as separate classes. (See §§ 868, 870, 872, as added

by Laws of 1917, chap. 786.) Webster's International Dictionary defines teacher as " one who teaches or instructs; esp., one whose occupation is to instruct; an instructor; tutor." The same authority defines principal as " leader, chief or head; * * * one who acts independently, or who has controlling authority; as, the principal of a faction, a school, a firm, etc., * * * distinguished from subordinate, abettor, auxiliary, assistant, etc."

It is common knowledge that a teacher and a principal perform entirely different duties. The principal often does not teach at all, but supervises the work of the teachers, acts as an executive, and has charge over the management and · discipline of the school.

Under the rules and policies of the board of education of the city of Buffalo, a teacher may not be selected for the office of principal except by taking an open, competitive examination, and where, I take it, others than teachers in Buffalo may also compete. If successful, the person is placed on an eligible list and thereafter may be appointed principal in the discretion of the board. All this indicates that the positions of teacher and principal have been regarded as entirely distinct. No doubt it would sometimes happen that a person who had made a good teacher would not be a success as principal, lacking executive capacity, or being temperamentally unfitted for the position. In selecting a person for an executive position, the personal equation is always prominent. The only sure way to establish the fact as to whether the selection of a candidate for principal is a wise one, is, of course, to have a probationary period when the person to become the permanent principal will be under observation and may demonstrate his fitness and capacity for the position. The rules and regulations of the board of education of Buffalo, we may assume, have been made for the benefit of the schools and not for the benefit of individuals; and it would seem to be a proper and wise provision of the law, and a correct interpretation of it, that the good of the schools was the object to be attained, even though it interfered with the interest or ambition of an individual teacher.

There is no vested right in the position of principal or teacher or the emoluments thereof, except as the same may be

given in a limited way by some express statute (*People ex rel. Peixotto* v. *Board of Education*, 212 N. Y. 463, 466); and while it is important that the tenure of office of a teacher should be made secure against personal, political or other unworthy attacks, it is equally important that there be some freedom of choice on the part of authorities after the test of experience, to the end that the schools shall be conducted and managed by those capable and fitted to do good work, and to act in harmony with their associates and their superiors in authority.

The tenure given to teachers by section 872 of the Education Law (as added by Laws of 1917, chap. 786) providing that " Such persons and all others employed in the teaching, examining or supervising service of the schools of a city, who have served the full probationary period, or have rendered satisfactorily an equivalent period of service prior to the time this act goes into effect shall hold their respective positions during good behavior and efficient and competent service, and shall not be removable except for cause after a hearing by the affirmative vote of a majority of the board," is in derogation of the common-law right of contract on the part of public authorities in engaging public servants of this character, and should be strictly construed.

It was evidently the intent of the Legislature by the provisions of section 872, subdivision 1, of the Education Law, to make separate classes among those connected with the work of the schools. The language used is: " District superintendents, directors, supervisors, principals, teachers and all other members of the teaching and supervising staff  *  *  * shall be appointed by the board of education, upon the recommendation of the superintendent of schools,  *  *  * for a probationary period of not less than one year and not to exceed three years; such period to be fixed by the board of education in its discretion. The service of a person appointed to any of such positions may be discontinued at any time during such probationary period, on the recommendation of the superintendent of schools,  *  *  * by a majority vote of the board of education." This should be construed to mean, as it plainly states, that the probationary period applies separately to the different classes therein mentioned to the end that the board of education may have some more efficient guide than the

mere passing of an examination in making a permanent choice of a principal or superintendent.

The questions discussed at Special Term as to the status of the appellant as a teacher are not presented here. This is a matter to be taken up first between her and the board of education, and if a satisfactory result is not obtained, either party may then review the matter before the Commissioner of Education or in the courts on a presentation of the facts as they then exist.

This decision, as I view it, will not affect her right to share in any retirement or pension fund to which she has contributed, created by the charter of the city of Buffalo or by the Education Law. (See Laws of 1914, chap. 217, § 294 *et seq.*, as amd.; Education Law, art. 43-B, *supra*, as amd.)

The order must be affirmed, with costs.

All concur.

Order affirmed, with ten dollars costs and disbursements.