JOSEPH C. FINLEY et al., Plaintiffs, *v.* FRANCIS T. SPAULDING, as Commissioner of Education of the State of New York, et al., Defendants.

Supreme Court, Special Term, Albany County, August 30, 1948.

*Hinman, Straub & Manning* for plaintiffs.

*Charles A. Brind, Jr.,* for defendants.

BOOKSTEIN, J. Under and pursuant to the provisions of article 37 of the Education Law, on or about June 3, 1948, defendant Francis T. Spaulding, as Commissioner of Education of the State of New York, made an order laying out as a central school district, the territory comprising certain union free school districts and common school districts in various towns in Wayne and Monroe Counties. Thereafter and pursuant to said article 37, a meeting was held on June 24, 1948, to act upon a resolution to organize said proposed central school district. Nine hundred and forty-seven qualified voters were present thereat. Of the 947 present, 473 voted in favor of the resolution; 470 voted in the negative and 4 ballots were blank. It thus appears that of those who voted, there was a majority of 3 in favor of the resolution; of the total number present those favoring the resolution lacked a majority of 1.

Acting upon the assumption that in order for such a resolution to be carried there was required the affirmative vote of a *majority of those present,* the resolution was declared lost and the meeting was adjourned. Such procedure was in compliance with subdivision 8 of section 1803 of the Education Law which provides that in the event the resolution is not adopted, no further proceedings should be had at the meeting except a motion to reconsider the question and that no such meeting should be called again within one year after such original meeting. No motion to reconsider was made at the meeting. No action was taken as required by subdivision 7 of section 1803 and subdivision 2 of section 1804 of the Education Law for the further organization of the district by the election of a board of education which subdivision 7 of section 1803 requires to be done, if the resolution creating the central school district is adopted. Subdivision 2 of section 1804 of the Education Law provides that the first board of education shall be elected at the meeting at which the resolution organizing the central school district and establishing the same is adopted.

Subsequently, notices of a meeting of the voters of said purported central school district to be held on the 20th day of July, 1948, for the purpose of electing a board of education and adopting a budget were posted as required by law. Such notices were signed by the defendants Morris Livingston and Warren Esley, said Morris Livingston being the district superintendent of schools of Wayne County and said Warren Esley having been duly elected chairman of the meeting held on June 24, 1948, at which the resolution to create the central school district in question was acted upon.

It is the claim of the plaintiffs that they learned through the medium of the public press that the defendant Commissioner of Education had ruled that the resolution, creating the central school district in question, had been adopted at the meeting of June 24, 1948, and that the central school district had in fact come into being. There appears to be no dispute as to the facts except possibly as to whether or not the Commissioner of Education had made any ruling that the proposed central school district had actually come into being. On the oral argument, counsel for the defendants stated that no formal ruling to that effect has been made by the commissioner although some subordinate of the Education Department may have informally ruled to that effect.

Plaintiffs have brought this action to restrain the defendants, for a period of one year from the 24th of June 1948, from taking any further action with regard to the further organization of said proposed central school district or any matters relating thereto and for a declaratory judgment declaring the rights and other legal relations of the parties in respect of the premises and, in said action, moves for a temporary injunction. No answer to the complaint has been served and no answering affidavits in opposition to the moving papers have been served, so that for the purposes of this motion, the allegations of the plaintiffs are assumed to be true.

Instead, defendants have made a cross motion to dismiss the complaint on the ground that the subject matter of the controversy is, under the provisions of the Education Law, a matter for determination by the Commissioner of Education.

Section 1735 of the Education Law, dealing with union free school districts, provides that: " All disputes concerning the validity of any district election or of any of the acts of the officers of such election shall be referred to the commissioner of education for determination and his decisions in the matter shall be final and not subject to review. The commissioner may in his discretion order a new election."

Under section 1804 of the Education Law, all of the provisions of that law relating to union free school districts, except as otherwise provided, are applicable also to central school districts. Accordingly, the provisions of section 1735 of the Education Law apply to a central school district. (See *Cudney* v. *Spaulding,* 191 Misc. 979.)

It is defendants' contention that, by reason of the aforesaid sections 1735 and 1804 of the Education Law, this court is ousted

of jurisdiction in the matter and the dispute must be referred to the Commissioner of Education and that his determination is final.

Were the controversy here one involving an election dispute in a meeting of a school district validly organized, there could be no question about the correctness of the contention of the defendants. Here, however, the action is based upon the premise that a central school district has not lawfully come into being and, if it has not come into being, that section 1735 of the Education Law does not oust the court of jurisdiction, since that section necessarily presupposes and is predicated upon the valid existence of a school district. If the school district does not exist, then that section does not confer upon the Commissioner of Education any authority whatsoever. That section grants exclusive jurisdiction to the Commissioner of Education to determine election disputes of a school district. If the school district does not exist, then no jurisdiction is reposed in the Commissioner of Education.

In this case, there is no dispute as to what occurred by way of ballot in the election. The election held was for the purpose of determining whether or not a proposed central school district should be established. There is no dispute as to the regularity of the proceedings up to the time of the adjournment of the first meeting. It is conceded that there were present 947 qualified electors; that 473 voted in favor of the resolution to create the proposed school district; that 470 voted in the negative; and that 4 ballots were blank. If we count only those who voted for and against the resolution, the resolution was carried by a majority of 3. Even if the 4 blanks are not counted as votes at all, but represent merely persons present and not voting, then, of those *present and voting,* there was a majority of 3 in favor of the resolution.

It is the contention of the plaintiffs that, in order for a central school district to be established, a resolution in favor thereof must be carried by a *majority* of all of the qualified electors *present;* in other words, in order for the resolution in this case to have carried that there would have had to be an affirmative vote of 474 in favor of the resolution.

Under the circumstances here presented, there is no dispute concerning the election itself. The dispute here is as to the interpretation of the statute governing the creation of a central school district.

Section 1803 of the Education Law (subd. 1), dealing with the creation of a central school district, provides that: " The affirma-

tive vote of a *majority* of the qualified voters *present* shall be required on the adoption of a resolution.'' (Italics supplied.)

If that section is interpreted literally, plaintiffs' contention that 474 votes were required is correct. Defendants concede that if the 4 persons who cast blank ballots are to be considered as present at the meeting, then the resolution failed of passage. The 4 persons casting blank ballots obviously were present or they could not have cast the blank ballots. The only theory upon which they could be considered as not affecting the election in question is if the section in question could be construed as requiring a majority of those *present and voting* and then treating those who cast the blank ballots as present but not voting, in which event those present and voting would constitute the 473 affirmative votes and the 470 negative votes cast, so that the resolution would have carried by 3 votes. However, this interpretation of the statute can not be adopted because it must be concluded that the Legislature, in the matter of the organization of a central school district, intended that the resolution creating it must have a majority of the affirmative votes of all qualified voters present, regardless of whether all qualified voters present voted or not. Numerous sections of the Education Law, dealing with elections, specifically provide that the action of a school district is determined by a majority vote of those *present and voting*. (See Education Law, §§ 401, 1505, 1512, 1523, 1525, 1602, 1703, 1726.) In the case of the organization of a central school district, however, the Legislature has specifically provided that a resolution to be carried must have an affirmative vote of a *majority of those present,* as distinguished from the cases in the foregoing sections where the provision is for a *majority of those present and voting.* Under familiar rules of statutory construction, it seems clear that there was a legislative intent, in the case of the organization of a central school district, that such a district should not be organized, unless a majority of the qualified electors *present* voted in favor thereof. This conclusion is strengthened by the fact that the source of the present section 1803 of the Education Law, to wit, former section 182 thereof, as last amended by chapter 95 of the Laws of 1927, provided for the adoption of a resolution to create a central school district '' by an affirmative vote of a *majority present and voting* ''. (Italics supplied.) By section 2 of chapter 637 of the Laws of 1944, former section 182 was repealed and a new section 182 enacted to read '' the affirmative vote of a *majority of the qualified voters present* shall be

required on the adoption of a resolution '' (italics supplied) and that is the language which has been carried into present section 1803. Here we have a deliberate change in the language of the section of the Education Law dealing with the organization of a central school district. The only reasonable interpretation of this action on the part of the Legislature is that it intended that, on the important question of centralization which has been the subject of much controversy, a clear majority of the qualified voters *present* at a meeting called for the purpose of acting on a resolution to organize a central school district, should be required before such a basic change could be brought about.

Under the circumstances, it is the conclusion of this court that the central school district in question never came into being and the resolution creating it failed to obtain the required number of votes as provided for by section 1803 of the Education Law.

Where, as here, there is no dispute about the election itself but rather a dispute as to the interpretation of the statute under which the election was held, section 1735 of the Education Law does not confer upon the Commissioner of Education jurisdiction, exclusive or otherwise, to determine the controversy in question; jurisdiction rests in the court.

There is some suggestion also that under section 310 of the Education Law the remedy of the plaintiffs is by appeal to the Commissioner of Education. It is true that under that section, the courts have held that in matters involving policy, administration or intradepartmental disputes or the like, the remedy provided by that section is exclusive but that it is not so in matters involving a tax levy or third parties not connected with the Education Department; that in such cases the Supreme Court has jurisdiction. (See *Matter of Golden* v. *Hamilton,* 171 Misc. 1039.) Also it has been held that '' where the right of a party depends upon the interpretation of a statute and it is claimed that a school board or official has proceeded to act in violation of an express statute, and thereby the party complaining is being deprived of valuable rights, the courts will not be ousted of jurisdiction to determine the matter, notwithstanding another method of settling the controversy has been provided.'' (*Matter of O'Connor* v. *Emerson,* 196 App. Div. 807, 810. See, also, *Matter of McMaster* v. *Owens,* 192 Misc. 687.)

Section 310 of the Education Law authorizing an appeal to the Commissioner of Education provides that such an appeal: '' * * * may be made in consequence of any action: 1. By any school district meeting.''

Were the question here involved, therefore, one simply of an election dispute, this court would be constrained to hold, under sections 1735, 1804 and 310 of the Education Law, that the Commissioner of Education has exclusive jurisdiction. It was so held in *Lewis* v. *Smith* (109 Misc. 694, affd. 190 App. Div. 884). In that case, however, the only dispute was an election dispute and it was a dispute which arose in an election conducted by an already legally constituted school district. No question of the interpretation of any statute was involved. Nor was there any question as to the validity of the existence of the school district in question. The entire controversy dealt with an election dispute and the regularity of the proceedings at the election and the qualifications of the persons who voted thereat.

The case of *Nichols* v. *Scanlon* (196 N. Y. S. 1) supports the conclusion reached in this case. There, as here, there was no dispute about the election or about the manner in which it was conducted. There the court said, at page 2: " No one complains of the validity of the election, or of the conduct of the officers of the election; but the complaint is that, notwithstanding the defeat of the proposition, the school trustee having charge of the taxpayers' funds is assuming to use those funds in a manner unauthorized by the vote of said election and therefore illegally. It is not conceivable that this court is not bound to furnish relief in such a situation."

So here, there is no dispute about the conduct of the election or the acts of the officers in adjourning the meeting when they correctly treated the resolution as having failed. Here, the quarrel is that, despite such action at the first meeting which was in accordance with law, the defendants are now proceeding as a result of that meeting, on the assumption that the resolution to organize a central school district had carried when, in fact, it had failed, if this court's interpretation of section 1803 of the Education Law is correct.

Both on principle and authority, therefore, this court has jurisdiction of the controversy and plaintiffs are entitled to the temporary injunction sought, upon filing the usual bond. Motion to dismiss complaint denied.

Submit order.