Reid S. Moule, J.
This is a proceeding brought under article 78 of the Civil Practice Act for an order to be directed against the members of the Board of Education of the Fredonia Centra] School District, Fredonia, New York, and others to review the validity of the acts of the Central School District in adopting the budget for the school year 1959-1960.
The petitioner questions two items in the 1959-1960 budget of the Central School District. The first is a balance of $23,171.36 in the treasury of Union Free School District No. 8, Town of Pomfret which was turned over to the Central School District in July, 1959. The petitioner seeks to have this money applied on the bond obligations of the Union Free School District No. 8. The second item is a planned balance of $75,000 on July 1, 1960, the close of the school year.
An examination of the petition and answer showed that triable issues of fact were presented, but these issues are now resolved by a stipulation dated September 14, 1959, signed by the attorneys for the parties in which the allegations of the petition, other than those presenting questions of law, are admitted.
The petitioner alleges that he is now and was during the years 1958-1959 the owner of several pieces of real property, described, in the Village of Fredonia and that he is subject to school taxes assessed against these properties by the Union Free School District No. 8, a school district coterminous with the Village of Fredonia; that in January, 1959 the new Fredonia Central School District was organized and the respondents, except one, were elected members of the Board of Education; that this latter district includes the Union Free School District No. 8 and additional areas and that the petitioner is a voter in the Fredonia Central School District.
The petitioner further alleges that prior to the first annual meeting of the Fredonia Central School District on July 14, 1959, the Union Free School District held its last district meeting on June 30, 1959; that at this meeting a resolution was presented to the voters of the Union Free School District — ■ ‘ ‘ which proposed that any unexpended balance remaining in the *752 treasury of the old Union Free School District No. 8, at the end of the fiscal year (June 30, 1959) he turned over to Fredonia Central School District ”; that the resolution was passed and that the balance remaining in the treasury of the Union Free School District which was turned over to the Fredonia Central School District during July, 1959, totalled $23,171.36. The court understands that this amount is included in the figures of the budget (p. 3) under “ Estimated Income 1959-1960.”
At the time the sum of $23,171.36 was turned over to the Fredonia Central School District the Union Free School District had an outstanding bonded indebtedness of $755,000. There was due and payable on this indebtedness as principal and interest the sum of $53,070 during the school year 1959-1960. The Union Free School is deemed in law to continue to exist for the purpose of paying all of its debts, including obligations issued prior to the organization of the Central School District (Education Law, § 1804, subd. 5).
Before considering the budget item questions it is necessary to determine this court’s jurisdiction which is questioned by the respondents who maintain that since this is a proceeding under article 78 of the Civil Practice Act the court is deprived of jurisdiction by reason of the provisions of subdivision 4 of section 1285. This section provides that the procedure under this article shall not be available to review a determination;— ‘1 4. Where it can be adequately reviewed by an appeal to a court or to some other body or officer. ’ ’ The respondents claim that the petitioner could have appealed his grievances alleged in his petition to the Commissioner of Education under sections 306, 310, 2024 and 2037 of the Education Law.
Though the Commissioner of Education has exclusive jurisdiction to review certain grievances and matters he does not have such exclusive jurisdiction in the construction of a statute or in matters involving a tax levy or grievances of parties not connected with the Department of Education. This is established by numerous decisions (Matter of O’Connor v. Emerson, 196 App. Div. 807, affd. 232 N. Y. 561; Matter of Cantor v. Board of Educ., 262 App. Div. 861; Matter of Golden v. Hamilton, 171 Misc. 1039; Matter of Miller v. Gould, 121 Misc. 270, 272; Austin v. Board of Trustees, 68 Misc. 538, 540; Corbett v. Union Free School Dist., 102 N. Y. S. 2d 924, 925; Anderson v. Board of Educ., 135 N. Y. S. 2d 189).
In Matter of O’Connor v. Emerson (supra) the court said at page 810:
“ The authority and jurisdiction of the Commissioner of Education are exclusive in all matters relating to the super *753 vision and control of the public school system, the discipline of the schools and the management of the school property, and the authority and discretionary acts on the part of officers or agencies of education. [Cases cited.]
1 ‘ But where the right of a party depends upon the interpretation of a statute and it is claimed that a school board or official has proceeded to act in violation of an express statute, and thereby the party complaining is being deprived of valuable rights, the courts will not be ousted of jurisdiction to determine the matter, notwithstanding another method of settling the controversy has been provided.” (Cases cited.)
In Matter of Cantor v. Board of Educ. (262 App. Div. 861, supra) the court affirmed the order granted in a proceeding under article 78 of the Civil Practice Act brought to review the adoption of a budget by a school district which declared the action of the school district void and set aside the budget and directed that a special meeting be called for the purpose of adopting a budget.
In Matter of Golden v. Hamilton (171 Misc. 1039, supra) the petitioner in a proceeding under article 78 of the Civil Practice Act challenged the validity of a school district budget. The respondents, as in the instant ease, contended that the Commissioner of Education had sole jurisdiction to review the action taken at the school meeting and that the right to appeal to the Commissioner barred the proceeding under the provisions of subdivision 4 of section 1285 of the Civil Practice Act. The court after discussing the decisions rejected this contention and said (p. 1041): “ It is my conclusion that this court has jurisdiction to entertain this proceeding, and the objections raised to the jurisdiction must be dismissed.” (For similar decisions see Matter of Eaton v. Allen, 1 Misc 2d 496; Matter of Kursch v. Board of Educ., 13 Misc 2d 252, 253.)
We now return to the $23,171.36 item. Since there is no claim that the balance in the treasury of the Union Free School District was derived from the sale of property owned by the district, which if true would require that the proceeds of such sale or sales be used to discharge any outstanding indebtedness of the district then due or which might thereafter become due (Education Law, § 1804, subd. 6) we turn to the pertinent provisions of subdivision 6 which in part reads: “Any balance of funds remaining in the treasury of the several districts included within the central school district on July first next following the date of the establishment of such central school district, after paying all outstanding obligations then due and payable, shall be turned over to the treasurer of the central *754 school district within thirty days thereafter. That portion of the balance representing tax money in each district shall be apportioned among the taxpayers of the existing district as they appear on the last completed town or city assessment roll prior to July first of the first year the central school board levies a tax, unless the voters of an existing district by a majority vote of those present and voting at a special school district meeting called for the purpose, prior to August first following the date of the organization of the central school district, shall vote to turn over the balance to the central district to be used for the benefit of the central district(Emphasis supplied.)
Clearly the above-quoted statute authorizes a school district incorporated into a central school district to transfer to that school district any balance of funds remaining in its treasury on July first following the date of the establishment of the central school district when a majority of the voters of a constituent school district at “ a special school district meeting called for that purpose ” shall vote to turn over the balance to the central school district to be used for the benefit of that district. A copy of the minutes of a special meeting of the voters of the Union Free School District held June 30, 1959, was submitted to the court. These minutes show that the notice of the meeting provided that the meeting was called for the specific purpose of voting on the question as to whether or not the unexpended balance in the treasury of the Union Free School District should be turned over to the Central School District. The minutes also show the adoption of a resolution by a majority of the voters to turn the balance over to the Central School District. The validity of the meeting itself is not challenged (Stipulation par. 8-2). The court, therefore, finds for the respondents on this issue.
The petitioner maintains that there is no warrant in law for the inclusion in the budget of the Central School District for the school year 1959-1960 of the planned balance of $75,000 (Ex. “A” to the petition, pp, 2, 17) and that the budget is invalid. This balance of $75,000 is more than 9% of the estimated expenditures of $818,775 for the purposes shown in the summary of the budget (p. 2). The following appears at page 17 of the budget:
“ 5. Planned Balance. The balance proposed of $75,000 has been established for two purposes. First, about $40,000 is required for salaries, maintenance, supplies, bond payments etc., between July 1, 1960 and September 15, 1960, when the first State Aid installment will be received by the District.
*755 “ The additional $35,000 is planned to help stabilize the tax rate for the first two years of the operation of the Central District. It is hoped that should a bond issue be passed during 1959-1960 that this sum, plus the State Aid to be received, will place the 1960-61 tax rate at a level approximately the 1959-60 levy. There are, of course, too many variables to make such a prediction with accuracy.”
In reference to the foregoing figures in the budget, counsel for the parties stipulated (par. 4) that the figure $40,000 was modified orally to $55,000 at the annual school district meeting and the figure of $35,000 was modified to $20,000 at the meeting. This does not change the planned balance of $75,000, nor does it change the question of law.
The respondents of the Board of Education could exercise no plenary powers in formulating and submitting the budget. Their powers are purely statutory. It has been said: “Boards of education and school district meetings have such powers only as are delegated, and such duties only as are imposed, by statute ” (Matter of Dist. No. 2, Town of Brookhaven, 214 App. Div. 40, 43; see, also, Matter of De Angelis v. Laino, 235 App. Div. 390, 391, affd. 260 N. Y. 661). An examination of the Education Law is essential to determine the right and power of the respondents to include the planned balance of $75,000 in the budget.
Section 1716 which is contained in article 35 of the Education Law relating to union free school districts provides in part: “ § 1716. Estimated expenses for ensuing year. It shall be the duty of the board of education of each district to present at the annual meeting a detailed statement in writing of the amount of money which will be required for the ensuing year for school purposes, exclusive of the public moneys, specifying the several purposes and the amount for each.” (Emphasis added.) The Legislature could hardly have used plainer and less ambiguous language than it did in requiring a Board of Education in submitting a budget to confine it to school purposes for the ensuing year. Language similiar to that quoted above is used in section 1608 which relates to common school districts. Subdivision 12 of section 1604 relating to common school districts provides that it shall be the duty of trustees of common schools and they shall have the power ‘ ‘ To collect by district tax an amount sufficient to maintain school in the district for the current school year,”. These sections clearly show the legislative policy.
Sections 416 (subd. 1) and 2021 of the Education Law provide that the voters of a school district by a majority vote may authorize certain acts and vote taxes for enumerated purposes. *756 There is no power or authority granted to raise moneys for a planned balance for some later school year or years. The maxim of “expressio unins est exclusio alterme^ applies here. In McKinney’s Consolidated Laws of New York (Book 1, Statutes) it is stated in section 240: “ It is a universal principle in the interpretation of statutes that expressio umius est exclusio alterius. That is, to say, the specific mention of one person or thing implies the exclusion of other persons or things.”
The respondents have failed to point to any statutory provision in the law, and none has been found by the court, authorizing a planned budget balance at the end of a school year. They state that the procedures followed by them were those advocated and approved by the State Education Department and that a majority of the central school districts in the Counties of Cattaraugus, Chautauqua, Erie and Niagara provide for planned balances as part of their budgets. In further support of their position, the respondents rely on rulings of Commissioners of Education in Matter of Wihnyk (78 N. Y. St. Dept. Rep. 104 [1957]) and Matter of Seymour J. Sinderband (1958) which are contrary to the. earlier ruling in Matter of Appeal from Assessment (43 N. Y. St. Dept. Rep. 158 [1933]). The later rulings relied upon are to the effect that a provision in a budget for a planned balance sufficient to take care of the necessary expenditures for the months of July and August of the next school year is proper and that a balance of approximately 10% of the budget is not excessive.
No statutory or decisional authority for a planned balance in a budget is cited in these rulings. In view of the-statutory provision that a central school district budget shall be “ for the ensuing year for school purposes ” (Education Law, § 1716) these rulings appear to be plain temporizing with the law. If the Central School District may include in its budget a planned balance of an amount approximately equal to 10% of its annual budget it can include a planned balance of 100% or more of the budget. What a Commissioner of Education may deem desirable or reasonable is no legal criterion.
If it has been found desirable by experience and to be more economical than borrowing to include in a school budget for the school year an additional sum of money to cover necessary expenditures for the first two or more months of the next school year, the matter should be brought to the attention of the Legislature which it may be expected would enact a statute permitting this to be done if upon investigation it found it desirable. Expediency does not justify ignoring the law. In Matter of Picone v. Commissioner of Licenses (241 N. Y. 157) Judge *757 Pound writing for the court said at page 162: “ Laws are made by the law-making power and not by administrative officers acting solely on their own ideas of sound public policy, however excellent such ideas may be.” (See 1 N Y Jur., Administrative Law, § 63, p. 395.)
I find that the school budget for the Central School District for the school year 1959-1960 which included a planned balance of $75,000 invalid.
Submit order.