Reid S. Moule, J.
This is a proceeding under article 78 of the Civil Practice Act in which the petitioners seek an order to annul the determination of the respondent, the Board of Education of Central School District No. 1, above described, *159 made oil May 12, 1960, discontinuing the school in School District No. 4 of the Town of New Hudson in Allegany County, New York, effective as of June 1, 1960, and commanding the respondent to reopen the school for the education of the children of the district for grades first through the sixth.
The petitioners maintain that the action on the part of the respondent on May 12, 1960, in closing and discontinuing the school in District No. 4 was ineffective and void under section 1805 of the Education Law in view of earlier action taken by the voters at meetings held in School District No. 4 pursuant to this section.
Section 1805 of the Education Law and the resolutions relied upon by the petitioners are discussed below.
The petitioners also maintain that they have a contractual right to the continuance of the school as District No. 4.
Though there are many denials contained in the respondent’s answer, most of these are directed to allegations stating conclusions of law. The admitted facts and those contained in documents are sufficient to present questions of law upon which this proceeding can be decided.
It is desirable at the outset to dispose of the jurisdictional question. The respondent as its first defense in its answer and in its brief maintains that the court is without jurisdiction in the matter on the theory that the Commissioner of Education has exclusive jurisdiction. Respondent’s contention is unsupported by and contrary to the decisions. (Matter of O’Connor v. Emerson, 196 App. Div. 807, 810, affd. 232 N. Y. 561; Leone v. Hunter, 21 Misc 2d 750; Madeo v. McGuire, 192 N. Y. S. 2d 936, 938.)
Central School District No. 1 was formed on or about October 14,1937. As formed it included former Cuba Union Free School District No. 1, and other school districts, including School District No. 4 of the Town of New Hudson.
It appears that third grade pupils were assigned from the school maintained at Cuba, New York, by the Central School District No. 1 to the school at District No. 4 for the years 1952-1953, 1953-1954 and 1954-1955. What if any significance these assignments of pupils have on the issues here is not shown and this court can see none.
The petitioners maintain that the respondent, the Central School District, was without power to close the local school in School District No. 4, by reason of the action taken by the voters of the district at meetings held in the years 1955, 1957 and 1958.
Section 1805 of the Education Law as amended in 1958 (L. 1958, ch. 497) under which the school in District No. 4 was *160 closed provides that the central school district shall continue, in each existing school district maintaining a school at the time of the centralization, such district school for the instruction of the pupils therein up to and including the sixth elementary grade for a period of not less than five years unless the voters of the district school at a meeting of such voters duly called by the board of education of such central school district by a majority vote decide to discontinue the local school before the expiration of the five-year period in which ease the school is discontinued accordingly. The section continues: “ At any time after the expiration of such minimum five year period the board of education of the central school district may, by a majority vote of the members thereof, discontinue such school in such existing district, provided, however, that in the event the legal voters of such existing district shall have determined not to discontinue such school at a meeting of such voters duly called upon such question, the board of education of the central school district may not discontinue such school until after the expiration of a period of five years following such determination by such legal voters. ’ ’ (Emphasis supplied.)
The preliminary question here is whether the 1955 meeting was “duly called upon such question”, that is, whether due notice was given to the voters of School District No. 4, that a meeting would be held on May 26,1955, to determine whether or not the local school should be discontinued. The word ‘ ‘ duly ’ ’ needs no comment. The word “ question ” as used in the phrase “ upon such question ” is a word of art. The word “ question ” is defined in Webster’s New International Dictionary (2d ed.) as: “4. A subject or point of investigation, examination, or debate; theme of inquiry; problem; matter to be inquired into; * * * 5. A subject or point of debate, or a proposition being or to be voted on, in a meeting, esp. in a legislative body ’ ’. (See for similar definition of the word “question” Funk and Wagnalls New Standard Dictionary and 74 C. J. S. 4.)
Section 1805 of the Education Law clearly contemplates that a meeting of the voters of a district school shall be duly called for the purpose of voting upon the question as to whether or not the school is to be discontinued. The notice of the meeting must give notice to the voters of the purpose of the meeting. This is required under section 2006 of the Education Law. Section 2010 of the same law does not detract from the above requirement. The latter section in brief provides that no district meeting shall be held illegal ‘ ‘ for want of a due notice to all the persons qualified to vote thereat,” when the omission is not willful and fraudulent. The section does not purport to *161 validate the action taken at a meeting not properly called by giving notice of its purpose.
We examine here the further proof submitted at the reopened hearing. A certified copy of an extract of the minutes of a meeting of the voters of School District No. 4, held May 11, 1955, is annexed to the affidavit of Bita Smith who presided at the meeting. These minutes of the meeting show that the matter ‘ ‘ of the use of the Black Creek School for the next school year was discussed and it was decided to hold a meeting at the Black Creek Schoolhouse on May 24th for a general discussion of the matter and to present several possibilities to the voters ”. The meeting apparently was held on May 26 rather than on May 24. The so-called notice of meeting of May 26 relied upon by the petitioners is a news item appearing in the Cuba Patriot dated May 19, 1955. This news item in part reads: “ Discussion of the use of the Black Creek Schoolhouse for 1955-56 is scheduled for a meeting of the voters of New Hudson School District Four on Thursday, May 26, at eight o’clock * * # Several definite propositions will evolve from the meeting, and a later meeting to vote on propositions will be scheduled.” The several propositions that were submitted to the May 26 meeting are set forth in the petitioners’ Exhibit No. 1. The first general proposition is: “ What use shall be made of the Black Creek School for the school year 1955-1956?” This is followed by three proposals which appear also to be confined to the school year 1955-1956.
The May 26 meeting was adjourned without any action having been taken to May 31 with a suggestion that no member of the Board of Education of the Central School District be present other than their local representative on that board. There are no minutes of this adjourned meeting to show what action was taken. The petitioners rely on current newspaper news items relating to the meeting. The petitioners also submit an affidavit of Lucille Lawton in which she states that she attended the meetings of May 26 and May 31 and that at the latter meeting the action taken was “ in substance ” to adopt proposal 1, as contained on the mimeograph sheet dated May 26, 1955, which is petitioners’ Exhibit No. 1. Proposal 1 relates to whether the pupils in grades 1-6 shall attend the local school of District No. 4. A fair reading of this proposal shows that it is limited to the school year 1955-1956.
From the foregoing review of the proof, it is clear that the meeting of May 31,1955 was a meeting adjourned from May 26. There is no claim of any further notice of or the purpose of the May 31 meeting. The purpose for which this adjourned *162 meeting was held depends on the purpose for which the meeting of May 26 was called. There is evidence that that meeting was called for information purposes. The petitioners, however, rely on the newspaper news item relating to the meeting of May 26, which, as shown, was called for a discussion of the use of the Black Creek School for “ the next school year.” The court finds that the so-called notice of the meeting of May 26 does not comply with the applicable provisions of section 1805 of the Education Law in connection with the essentials of a notice of a meeting of the voters to decide the question as to whether or not a district school shall be discontinued. Furthermore, from the hearsay proof as to the action taken at the meeting of May 31, it seems clear that the decision of the voters to continue the district school was limited to the school year 1955-1956.
The court holds as a matter of law that the above-quoted provisions of section 1805 of the Education Law which were inserted in the law by a 1958 amendment to the section have no retroactive application. Had the meetings of May 26 and May 31 been properly called and had the voters duly resolved at those meetings to continue the district school, the fortuitous action taken would have been wholly ineffective to comply with a then nonexistent law. The 1958 amendment to section 1805 contemplates action after the effective date of the amendment (April 9, 1958).
We need discuss only briefly the 1957 and 1958 meeting of the voters of District No. 4, relied upon in part by the petitioners. These meetings were called by the Board of Education of the Central District School. The first was held on May 28, 1957, and the second on August 20, 1958. The petitioners maintain that the voters at these meetings considered the question of the continuance of the local school for the instruction of the children of the district for the grades from the first to the sixth inclusive and that the voters decided to continue the school for the instruction of the children in the grades up to and including the fifth grade and that the children in the sixth grade temporarily, that is, for the school years 1957-1958 and 1958-1959, respectively, be transferred to the Central District No. 1 School at Cuba, New York. Petitioners’ conclusion that the voters decided to continue the local school at these meetings is wholly unwarranted. This is shown by the minutes of these meetings. The minutes of the 1957 meeting provide in part: “ The meeting was called to consider the question: * Shall the 6th Grade children from the Black Creek School attend Cuba Central School in Cuba, N. Y? ’ ” The minutes of the 1958 meeting provide in part: “ The meeting was called to consider the follow *163 ing question: 1 Shall the 6th Grade pupils of Black Creek Dist. No. 4 attend the Cuba Central School, Cuba, N. Y. or at the Black Creek School during the 1958-59 school year? ’ ” The above-quoted excerpts from the minutes of these meetings show the limited purpose for which these meetings were called and the minutes show that no other questions were considered.
The petitioners’ contention that they have a contractual right to have the school of District No. 4 continued has no basis in fact and is unsupp or table in law. This proceeding is dismissed on the merits.