George L. Cobb, J.
This is a proceeding by the Public Employment Relations Board (hereinafter PERB), pursuant to subdivision 4 of section 210 of the Civil Service Law, for a judgment enforcing an order of PERB directing the respondent, the Board of Education of Central School District No. 2 of the Towns of Claverack, Ghent, Hillsdale, Austerlitz, Livingston and Taghkanic, commonly known as the Ockawamick Central School District, to offer to reinstate one of its teachers to her former employment with said school district as of September 1, 1968 and to compensate her for wages lost as a result of the actions of said Board of Education.
The teacher, Faith Gagnier, was employed by said Board of Education as an elementary teacher for a probationary period of three years beginning September 1, 1965. During the course of such employment she served as president of the Ockawamick Teachers Association and as such officer took part in certain collective negotiations with the Board of Education, pursuant to the Taylor Law, during the years 1967 and 1968.
*944 On April 9,1968, the Board of Education notified Mrs. Gagnier that she would not be given tenure and that her employment was terminated as of September 1, 1968. It appears that this action was taken by the board at a meeting held on March 11, 1968, at which a motion was made to grant tenure to Mrs. Gagnier on the recommendation of the District Superintendent of Schools, which motion was defeated.
Pursuant to rules of procedure adopted by PERB (4 NYCRR 204), Mrs. Gagnier then filed a charge with PERB, dated April 21, 1968, in which she alleged that the termination of her employment by the Board of Education was an act of reprisal against her ‘ ‘ because of her organizational activities and for no lawful reasons ’ ’.
Later and on July 25, 1968 a complaint was filed against the Board of Education by reason of such charge by Mrs. Gagnier, on which complaint a hearing was held on August 21,1968 before a hearing officer designated by PERB. The Board of Education submitted an answer to the complaint and appeared at the hearing and moved to dismiss the complaint, asserting, among other grounds, lack of jurisdiction, which motion was denied. Counsel for the Board of Education refused to take part in the hearing and instructed the members of the Board of Education who had been subpoenaed not to answer any questions. However, two of the members of the board testified at the hearing after being directed to do so by the hearing officer.
Following such hearing, a report was made by the hearing officer, dated October 18,1968, in which he stated that the motive underlying the refusal of the board to grant tenure was an act of reprisal and it was his recommendation that PERB direct the Board of Education to employ Mrs. Gagnier effective as of September 1, 1968. On such report a decision was made by PERB dated December 11,1968 which found that Faith Gagnier “was denied tenure because of her activities on behalf of an employee organization [Ockawamick Teachers Association] ” and ordered the Board of Education to “ offer to reinstate Gagnier to her former employment as of September 1, 1968 and to compensate her for wages lost as a result of respondent’s act ”.
The Board of Education, in its answer to the petition herein, asks for judgment dismissing the petition and setting aside the findings and order of PERB on the grounds that PERB was without jurisdiction under article 14 of the Civil Service Law to consider and decide such alleged reprisal; that the procedure followed by Mrs. Gagnier was contrary to the laws of the State of New York, and in particular, the Education Law; and that the *945 hearing officer’s recommendation and the decision of- PERB were not supported by evidence.
The initial question to be considered in this proceeding is whether, under article 14 of the Civil Service Law (L. 1967, ch. 392), commonly known as the Taylor Law, PERB had the authority to hear and determine the charge made by Faith G-agnier and to issue an order directing the Board of Education to offer to reinstate her.
At the time Mrs. Gagnier was dismissed by the respondent, she was a probationary teacher and her right to an appointment on tenure was subject to the provisions of section 3013 of the Education Law. This section provides that before a teacher shall be granted an appointment on tenure, the teacher shall serve a probationary period of not to exceed five years and that the services of a probationary teacher ‘ ‘ may be discontinued at any time during such probationary period ’ ’. It is well-settled law that a teacher has no vested rights to tenure during the probationary period and that the services of a probationary teacher may be discontinued without a hearing and without giving the reasons therefor. (Matter of McMaster v. Owens, 275 App. Div. 506; Matter of Hickey v. Carey, 275 App. Div. 964; Matter of Pinto v. Wynstra, 22 A D 2d 914; Matter of Butler v. Allen, 29 A D 2d 799.)
In 1949, four years after the enactment of section 3013, the Appellate Division, Third Department, in Matter of McMaster v. Owens (supra), had occasion to pass upon section 3013. The court stated (pp. 508-509): “ Under this statute, as under the other similar statutes, a teacher has no vested right to tenure during the probationary period. (Matter of O’Connor v. Emerson, supra [196 App. Div. 807]; Matter of High v. Board of Education, N. Hempstead, 169 Misc. 98, affd. 256 App. Div. 1074, affd. 281 N. Y. 815.) The statute requires the board to select persons for permanent appointment from those who have completed their probationary service and have been recommended by the district superintendent. Beyond these limitations the board still retains all of its common-law powers in making or refusing to make a permanent contract with any person so recommended. The completion of the probationary service and the obtaining of the superintendent’s recommendation make a teacher eligible to enter into a permanent contract •carrying the rights of tenure provided the board is willing to make such a contract, but confers no further right to tenure beyond that of eligibility. This is clear from the plain wording of the statute and must be regarded as the legislative intent. (Matter of McManus [Bd. of Education, Union Free School Dist. No. 1, Town of Haverstraw), 64 N. Y. St. Dept. Rep. 99.)
*946 “ The making of a permanent contract with tenure constitutes a long commitment that should not be incurred' without the most careful consideration. The screening of candidates by the principal and district superintendent to select those whose technical training and experience make them eligible for consideration is doubtless a wise requirement of the law. On the other hand, it may well be that a teacher with satisfactory technical qualifications might have certain personal characteristics and attitudes that would prevent him from acting in harmony with his associates and fitting into the requirements of a particular school. In such a case the judgment and discretion of the board, made up of men and women of standing and experience, are most valuable safeguards in the selection of a permanent teaching staff for carrying on the work of the school. The Legislature has not seen fit to abrogate the power of the board in making permanent contracts.”
The petitioner recognizes the right of a Board of Education to deny tenure to a probationary teacher, but contends that such right must now bow to the provisions of the Taylor Law to the extent that such a denial of tenure must not be in violation of a teacher’s right to organize, join and participate in employee organizations.
The intention of the Legislature in enacting the Taylor Law is set forth in section 200 of the Civil Service Law, wherein it is declared that it is the public policy of the State and the purpose of the act to promote harmonious and co-operative relationships between government and its employees and to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government and that such policies are best effectuated by: “ (a) granting to public employees the right of organization and representation, (b) requiring the state, local governments and other political subdivisions to negotiate with, and enter into written agreements with employee organizations representing public employees which have been certified or recognized, (c) creating a public employment relations board to assist in resolving disputes between public employees and public employers, and (d) continuing the prohibition against strikes by public employees and providing remedies for violations of such prohibition.”
By sections 202 and 203 public employees are granted the right to organize or join employee organizations and to be represented by such organizations in collective negotiations with their employers. By section 204 public employers are empowered to recognize employee organizations and are *947 required to negotiate with those organizations which are recognized or certified as representing their employees. Section 205 creates the Public Employment Relations Board, PERB, and grants to it certain enumerated powers and functions, and by paragraph (k) of subdivision 5 thereof PERB is granted the power: “ To make, amend and rescind, from time to time, such rules and regulations, including but not limited to those governing its internal organization and conduct of its affairs, and to exercise such other powers, as may be appropriate to effectuate the purposes and provisions of this article.”
The Taylor Law, as enacted by chapter 392 of the Laws of 1967, did not contain any provisions relating to acts of reprisal by a public employer, or other unfair labor practices, nor was PERB expressly empowered to prevent unfair labor practices. (See revision of the Tayor' Law, chapter 24 of the Laws of 1969, which added to the Civil Service Law a new section, section 209-a, effective September 1, 1969, which defines improper employer practices and improper employee organization practices, and which amends subdivision 5 of section 205 by adding a new paragraph [d], giving PERB the authority to establish procedures for the prevention of improper employer and employee organization practices, as defined by section 209-a; cf. Labor Law, §§ 704, 706.)
The petitioner contends that its authority to adopt rules for the hearing, determination and issuance of orders relative to charges that a public employer has engaged in an act of reprisal against a public employee is implicit in the Tayor Law, and the the exercise of such authority is necessary and proper to effectuate the purposes of the statute and to protect the rights of public employees to join and participate in employee organizations as guaranteed by the statute.
This argument is not persuasive in respect to the case at hand, wherein the effect of the hearing was to require the Board of Education to state its reasons for denying tenure to a teacher, and the result of the determination and order would be to compel the Board of Education to reinstate a teacher who had previously been denied tenure. Had the Legislature intended such consequences, the effect of which would be to overturn the well-established rule that under section 3013 and similar provisions of the Education Law a Board of Education has an unrestricted right to deny tenure, it could have so provided. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 74.) The court finds no language in the statute which indicates an intention on the part of the Legislature to give PERB the power to exercise any control over the tenure *948 provisions of the Education Law. The rule of statutory construction that “ an intention of making an innovation in a long established rule of law is not imputed to the Legislature in the absence of a clear manifestation of such intention” has application in this case. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 153.)
Accordingly, the court concludes that PERB did not have authority under article 14 of the Civil Service Law, as enacted by chapter 392 of the Laws of 1967, to hear and determine the complaint of Mrs. Gagnier and to issue an order directing the Board of Education to reinstate her.
The petition is dismissed, and the findings and order of PERB are hereby set aside. In view of the determination herein, the court does not pass upon the question of whether or not there was sufficient evidence to support the findings and order of PERB.