In the Matter of WARREN Ross et al., Respondents, against LEWIS A. WILSON, as Commissioner of Education of the State of New York, et al., Appellants.

Third Department, July 8, 1954.

*Charles A. Brind, Jr., John P. Jehu, Elizabeth M. Eastman* and *George B. Farrington* for Lewis A. Wilson, as Commissioner of Education, appellant.

*Robert G. Wright* for Board of Education, appellant.

*Alton R. Erickson* for respondents.

HALPERN, J.   This is an appeal from an order of the Special Term, annulling and setting aside a determination made by the appellant Commissioner of Education, which had upheld against the challenge of the petitioners-respondents, the action of the appellant Board of Education in contracting to sell certain real property.

The facts are not in dispute.   The appellant Board of Education is the Board of Education of Central School District No. 1 of the Towns of Ellicott, Ellington, Poland, Gerry and Carroll, Chautauqua County.   Included within the Central School District, is former Common School District No. 1 of the Towns of Ellicott and Gerry, known as the Ross Mills District.   The district school, which had been maintained by the Common School District up to the time of centralization, was operated by the Central School District to the end of the school year 1952–1953.

In February, 1953, the Board of Education called a special meeting of the qualified voters of the former common school district, to consider a vote upon a proposition to close the school and to sell the school property.

In the notice of the meeting, four propositions were listed: (1) Should the school be closed?   (2) Should the school property be sold to Ross Mills Church of God for $2,000?   (3) Should the property be sold to Ross Grange for $3,000?   (4) Should the property be sold by public auction to the highest bidder?

The notice stated that the vote would be held upon proposition No. 1 " and as many of the succeeding propositions as is necessary to dispose of the property ".

At the meeting, the proposal to close the school was carried by an overwhelming vote.   Then proposition No. 2 was submitted and it was carried by a majority vote.   The remaining two propositions were not submitted.

As appeared from the notice of meeting, the Board of Education had received an offer of $2,000 from the Church and $3,000 from the Grange, prior to the calling of the meeting.   At the meeting itself, Warren Ross, one of the petitioners, made an oral offer of $4,000 and he subsequently confirmed this offer in writing.   Nevertheless, a majority of the qualified voters present at the meeting decided to accept the $2,000 offer made by the Church.

Thereafter the Board of Education, pursuant to the action by the voters taken at the meeting, entered into a contract to sell the property to the Church.

A local assessor had appraised the property at the request of the Board of Education prior to the meeting and he had reported that the property was reasonably worth $2,500. After the meeting, the petitioners caused an appraisal to be made by a local real estate broker and he appraised the property at $4,200.

The petitioners appealed to the Commissioner of Education from the action of the Board of Education in contracting to sell the property to the Ross Mills Church. The commissioner dismissed the appeal and sustained the action of the Board of Education. Thereupon, a proceeding was brought under article 78 to review the determination by the Commissioner of Education and, in that proceeding, the Special Term granted an order setting aside and annulling the determination. This appeal is taken from that order.

The petitioners maintained that, under the relevant sections of the Education Law, the Board of Education had no right to sell the property to the Church for $2,000 in the face of the offer of $3,000 by the Grange and the prospective offer of $4,000 by the petitioner Ross. The petitioners pointed out that, under the statute, the proceeds of the sale were to be distributed to the taxpayers and the petitioners maintained that the Board of Education was under a fiduciary duty to the taxpayers to obtain the highest price which it could for the property.

The Board of Education took a different view, maintaining that the Legislature had vested in the voters of the district the discretionary power to determine the price and terms upon which the property should be sold and that the voters had the right to take into account the identity of the offerer, the prospective use of the property and other factors, apart from the price offered, and that they had the right to accept the offer which, in their judgment, would best accord with the interests of the community.

Upon the appeal to the Commissioner of Education, the commissioner adopted this view and dismissed the appeal.

In seeking judicial review of the commissioner's decision, the petitioners are confronted at the threshold by the barrier of section 310 of the Education Law. This section provides that the decision of the Commissioner of Education "shall be final and conclusive, and not subject to question or review in any place or court whatever". The finality rule is not only applicable to

questions of fact but extends also to questions of the interpretation of statutes (*Matter of Levitch* v. *Board of Educ.,* 243 N. Y. 373).

Section 310 has been construed, not as foreclosing all judicial review, but as limiting the scope of review to a determination of whether the commissioner's action was " purely arbitrary " (*Matter of Levitch* v. *Board of Educ., supra*) or depended " upon such arbitrary or naked power that no reasonable man could reach the result upon appeal " (*Matter of Cochran* v. *Levy,* 175 Misc., 666, 668. BERGAN, J., affd. 263 App. Div. 921).

The petitioners could have appealed directly to the courts in an appropriate action or proceeding to enjoin the Board of Education from taking action which, under their interpretation of the statute, would violate their property rights. In cases of this type, the remedy by appeal to the Commissioner of Education is not exclusive (*Matter of O'Connor* v. *Emerson,* 196 App. Div. 807, affd. 232 N. Y. 561; *Matter of McMaster* v. *Owens,* 192 Misc. 687). While it has been held that a taxpayer's action under section 51 of the General Municipal Law cannot be maintained against a school district for the reason that a school district is not technically a municipal corporation under the definition in that law (*Schnepel* v. *Board of Educ.,* 302 N. Y. 94), that ruling applies only to actions brought under the cited section. It has no bearing upon the right of persons who claim to have suffered special injury as the result of the action of the school district, to invoke the aid of the courts in an action or proceeding brought independently of the provisions of the General Municipal Law (*Matter of O'Connor* v. *Emerson, supra; Corbett* v. *Union Free School Dist. No. 21,* 102 N. Y. S. 2d 924; cf. *Matter of Kaelber* v. *Sahm,* 281 App. Div. 980, aff. 305 N. Y. 858).

Instead of resorting to the courts in the first instance, the petitioners chose to appeal to the Commissioner of Education, as they had the right to do under the Education Law. Having appealed to him, they must accept his decision as conclusive (*Barringer* v. *Powell,* 230 N. Y. 37; *Matter of Chapin* v. *Board of Educ.,* 291 N. Y. 241).

It should be borne in mind that this proceeding is brought to review the commissioner's decision upon the appeal taken by the petitioners to the commissioner, not to determine *de novo* the propriety of the action of the Board of Education or of the voters of the district. There can be no question as to the applicability of the finality rule to this proceeding. Under its plain terms, section 310 of the Education Law is applicable to the

review of any decision made by the commissioner upon an appeal to him from the action of a school district meeting or from an official act or decision of school authorities.

Our only power, under the circumstances, is to determine whether there was a reasonable basis for the commissioner's interpretation of the statute, so that it cannot be stigmatized as purely arbitrary or wholly lacking in rationality. We accordingly analyze the conflicting interpretations advanced by the parties, with that end in view.

The petitioners contend that the power of the Board of Education and of the voters must be determined solely by the language of subdivision 6 of section 1804 which reads in part as follows: " The board of education shall not sell or otherwise dispose of the property of any such existing district except with the approval of a majority of the qualified voters of such existing district present and voting upon the question at a meeting of such voters duly called by such board of education. For that purpose the proceeds of such sale or disposal of property belonging to such existing district, after deducting the cost of repairs or improvements made after the organization of the central school district, shall be apportioned among the taxpayers of such existing district as they appear upon the last completed town or city assessment roll preceding the date of sale."

It will be noted that there is no express statement in the statute of the standard which is to guide the Board of Education or the voters in passing upon a proposed sale; there is no express requirement that the sale be made to the highest bidder or at the highest obtainable price. However, it is the petitioners' contention that such a requirement should be read into the statute, largely because of the provision of the second sentence quoted above, to the effect that the proceeds of the sale shall be distributed among the taxpayers of the district. The petitioners contend, in effect, that because the proceeds of the sale are to be distributed to the taxpayers, the Board of Education and the voters are deprived of the discretionary power which they might otherwise have in dealing with a question of public concern and are reduced to the position of ministerial agents who are under a fiduciary obligation to obtain the highest possible price for the benefit of the taxpayers.

On the other hand, the commissioner argues that the petitioners place too great emphasis upon the provision that the taxpayers are to receive the proceeds of the sale. We find

his view a persuasive one. It does not follow from the fact that the Legislature has seen fit to authorize a refund to the taxpayers, that the Legislature intended to convert the Board of Education and the voters of the district into mere automatons, who are solely to serve the interest of the taxpayers to the exclusion of all other interests. If this had been the legislative intent, there would have been no need to entrust the matter to the Board of Education or the voters of the district at all. The Legislature could simply have provided for the sale of the property by a public official at public auction to the highest bidder. The Legislature has so provided with respect to the property of a dissolved school district. Section 1520 of the Education Law provides that the property of such a district is to be sold by the supervisor of the town to the highest bidder at public auction. It is significant that, in section 1804, the Legislature has not provided for the sale at public auction of the property of the pre-existing common school district but has left it to the Board of Education to negotiate a sale and then to submit it to the voters for approval. The fact that the Legislature has entrusted the making of the sale to the board, with the approval of a majority of the qualified voters, indicates that it intended they should have normal discretionary power in dealing with the matter.

The fact that the statute is silent as to the standard which is to guide the board and the voters, does not lead to the conclusion, suggested by the petitioners, that they may sell only at the highest obtainable price but leads rather to the conclusion that they may take factors other than price into consideration.

In the absence of a specific statutory provision to that effect, the board of a municipal or other public corporation is not required to use competitive bidding, or otherwise to seek the highest obtainable price, in selling its property (10 McQuillin on Municipal Corporations, § 29.73, p. 357; *Ravenelle* v. *City of Woonsocket*, 73 R. I. 270; *Quackenbush* v. *City of Cheyenne*, 52 Wyo. 146; *Schatz* v. *City Council of City of New England*, 61 N. W. 2d 423).

Subject to the requirement that it must act in good faith and within the reasonable limits of its discretionary power, the board has the right to select that sale which, in its judgment, will best serve the interests of the community. This is true, a fortiori, when the final action is to be taken not by the board, but by a majority of the voters of the community, in accordance with democratic procedure.

We need hardly add that there is, of course, no charge of fraud or bad faith in the present case.

We have assumed up to this point, that the petitioners are right in their assertion that subdivision 6 of section 1804 of the Education Law is the solely applicable statute and we have pointed out, that even upon that assumption, it does not follow that the voters are bound to sell to the highest offerer. However, the commissioner makes the additional persuasive argument that section 1804 is not the solely controlling statute and that it must be read together with section 402 of the Education Law. Subdivision 1 of section 402, so far as here relevant, reads as follows: " Whenever the site of a schoolhouse shall have been changed, as herein provided, the inhabitants of a district entitled to vote, lawfully assembled at any district meeting, shall have power, by a majority of the votes of those present and voting, to direct the sale of the former site or lot, and the buildings thereon and appurtenances or any part thereof, at such price and upon such terms as they shall deem proper ".

It will be recalled that subdivision 6 of section 1804 merely states a restriction upon the power of the Board of Education, forbidding it to sell the property of the existing district without the approval of a majority of the voters of the district, and that it does not purport to state the scope of the authority of the board or the voters. For this, we must have recourse to section 402 which provides that a majority of the voters may direct the sale of a former schoolhouse or site " at such price and upon such terms as they shall deem proper ". This provision, it is undisputed, authorizes the voters to take into account the identity of the buyer and the prospective use of the property as well as the price offered, in passing upon the desirability of a proposed sale.

Section 402 is part of the article of the Education Law which deals generally with school buildings and sites. It goes back to section 461 of the Education Law of 1910 which was originally derived from the Consolidated School Law of 1894. Section 1804 is part of the article dealing with the formation of central school districts which was added by chapter 55 of the Laws of 1914, as amended by chapter 673 of the Laws of 1925. The commissioner argues, with considerable force, that the general section dealing with the disposition of school buildings upon a change of site, is applicable to the disposition of the school buildings of the former common school districts, which are no longer needed, upon the formation of a central school district. While section 402 is in terms applicable only to a case in which the site of a school-

house " shall have been changed ", the commissioner's interpretation does not seem to us to stretch these words beyond their elastic limits. The words can be liberally construed to cover the case of the shifting of education in the elementary grades from the schoolhouse of a common school district to a new building in a central school district.

In the light of the foregoing, it can hardly be questioned that the interpretation of the statute adopted by the commissioner was a reasonable one, which lay well within the range of reasonably permissible interpretations of the statute. In these circumstances, under section 310 of the Education Law, the commissioner's choice among the conflicting interpretations must be accepted as final and binding.

The finality rule does not, of course, extend so far as to allow the commissioner to authorize or condone a violation of the State or Federal Constitutions. If the construction of the statute adopted by the commissioner produces an unconstitutional result, it will not be allowed to stand.

The petitioners contend that the action of the voters which the commission held to be proper, under his construction of the statute, violated the provisions of the State and Federal Constitutions in two respects. First, they invoke section 1 of article VIII of the New York State Constitution which provides in part as follows: " No county, city, town, village or school district shall give or loan any money or property to or in aid of any individual, or private corporation or association, or private undertaking ".

This provision has no relevance here. The provision is designed to forbid the gift of property by a local unit of government without consideration, not to regulate the price or the adequacy of the consideration of a bona fide sale of property. (Cf. definition of " gift " in *Gray* v. *Barton*, 55 N. Y. 68, 72.) Of course, the sale must be a·bona fide one; it will not be permitted to stand if the consideration was so grossly inadequate as to indicate that the transaction was not a true sale but rather a gift in disguise, but nothing of that kind is involved here.

The petitioners would give the constitutional provision a much broader meaning. They argue that it has the effect of prohibiting a municipal corporation from selling its property except for the highest obtainable price, and of prohibiting the Legislature from authorizing a municipal corporation to take any factors other than price into consideration in selling its property. We do not believe that the constitutional provision has such a drastic

effect. The Legislature may still authorize a municipal corporation to sell its property in accordance with its judgment as to what will best serve its interests, without rigidly restricting it to the acceptance of the highest offer. A bona fide sale for a substantial consideration, pursuant to such authorization, is not a gift within the meaning of the Constitution.

The second constitutional objection raised by the petitioners is based upon the due process clauses of the State and Federal Constitutions. It is argued that to permit the majority of the voters of the district to sell the property at less than its full value is to deprive the minority of the voters, and other taxpayers who are not residents of the district and who are not entitled to vote, of their interest in the property without due process of law. The simple answer to this contention is that the taxpayers have no vested interest in the property; they have no right to any part of the proceeds of its sale except as the Legislature may give it to them. While the property may have been paid for out of annual tax revenues, there is no constitutional right on the part of the taxpayers to a refund of any part of the money upon the closing of the school and the sale of the property. The Legislature could, if it wished, have directed that the proceeds of the sale be turned over to the Central School District for its use instead of being distributed among the taxpayers of the Common School District. As a matter of fact, the Legislature has provided for that disposition of the proceeds of sales under subdivision 6 of section 1804, upon approval by a majority of the voters of the district, in the case of sales taking place after March 31, 1954 (L. 1954, ch. 362).

The fact that, in its prior form, the statute required a distribution of the proceeds to the taxpayers did not have the effect of making the taxpayers co-owners of the property nor did it put them in the position of stockholders of a private corporation or beneficiaries of a private trust with respect to it. The property was still public property to be disposed of by the public authorities in such manner as the Legislature might authorize. It was still for the Legislature to say how the property was to be sold and what discretion should be vested in the board or the voters of the district with respect to the sale.

The fact that the Legislature gave the taxpayers an interest in the fund to be created by the sale did not give them any constitutional right to control the manner of the sale or to insist that the property be sold at the highest price obtainable in order that as large a fund as possible might be created. The Legislature was

still free to leave it to the majority of the voters of the district to determine to whom and at what price the property should be sold.

The order of the Special Term should be reversed and the petition dismissed, with costs.

Foster, P. J., Bergan, Coon and Imrie, JJ., concur.

Order reversed and petition dismissed, with $50 costs to be divided between the Commissioner of Education and the Board of Education.