The decision and award should be affirmed, with costs to the Workmen's Compensation Board.

FOSTER, P. J., BERGAN, HALPERN and GIBSON, JJ., concur.

Decision and award affirmed, with costs to the Workmen's Compensation Board.

In the Matter of HORACE F. KUHN, Appellant, against COMMISSIONER OF EDUCATION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, May 10, 1956.

*Edward M. Horey* for appellant.

*John P. Jehu, Charles A. Brind, Jr., Elizabeth M. Eastman* and *George B. Farrington* for Commissioner of Education, respondent.

*Ralph W. Jackson, Sr.,* for Board of Education, respondent.

GIBSON, J.  On December 16, 1954, a special school election was held in the central school district here involved, to vote upon a proposition to acquire a certain parcel of land as the site for a new school building and to construct, furnish and equip the building, at not to exceed the estimated total cost specified in the proposition, to levy and collect a tax therefor in annual installments and to issue bonds in anticipation of such tax.

When the polls closed at the election here disputed, four inspectors of election proceeded to count the ballots and during their canvass placed in the center of the table at which they were working certain ballots said to be blank in some cases and

in others void as marked improperly. Some time later these supposedly defective ballots were removed from the inspectors' table to an adjacent table where they were examined by members of the board of education and by attorneys representing the board. Appellant contends, on the strength of an affidavit by one of the four inspectors, which is contradicted by the other three inspectors and by other persons present, that these ballots were thus removed and examined before the inspectors had finally passed on their validity and that it was not her impression that the placing of the ballots in the center of the table indicated any final decision concerning them. Nevertheless she and the other three inspectors, upon the conclusion of the canvass, executed their certificate that they had canvassed the vote and that the total number of names on the poll list was 1,129, the total number of ballots cast was 1,129, the total number of ballots in favor of the proposition was 736, the total number of ballots against the proposition was 364 and the number of blank, destroyed or otherwise defective ballots was 29. Thus the proposition was shown to have been carried by two votes in excess of the two-thirds vote required in this case (Local Finance Law, § 104.00) and the chairman announced that result.

Upon the completion of the canvass all ballots cast were sealed in the ballot box and the box placed in the safe of a local merchant. There was proof, which the commissioner was entitled to credit, that the 29 rejected ballots were segregated from the others by attaching them to the poll list by means of a paper clip. The next day, they were removed from the sealed box by the president of the board of education, the clerk of the board, a school principal, his secretary, and another person not connected with the board and placed in a school safe. There was proof that such removal was necessary so that the ballot box could be returned to the municipality from which it had been borrowed and, further, because the school district had no vault or safe large enough to receive the box. Then and previously, the 29 supposed defective ballots were, according to the proof, segregated from the valid ballots and before being placed in the school safe the alleged defective ballots were sealed in an envelope. According to the evidence, the ballots, enclosed in the sealed envelope, remained in the school safe until the 29 now in dispute were removed, in the presence of appellant's attorney, among others, pursuant to order of the Commissioner of Education, and thereupon transmitted to the commissioner. It seems to be agreed that of the 29 ballots in question, 10 were blank, one was voted both " Yes " and " No " and of the remaining 18, 9 were apparently intended to be voted " Yes " and 9

to be voted " No ", but each of the 18 was defective as marked otherwise than by a cross X mark in a voting square as required by the instructions printed on the ballot, which accorded with the requirements of the statute. (Education Law, § 2034, subd. 3, par. d, applicable to central school district elections by virtue of Education Law, § 1804, subd. 1.)

Certain individuals, of whom the appellant here was one, by petition appealed to the Commissioner of Education to declare the election irregular and void. Between the time of the filing of the petition in January, 1955 and the date of the commissioner's decision of June 15, 1955, the parties filed lengthy pleadings and many voluminous affidavits, the commissioner stayed the board from proceeding with the acquisition, construction and financing supposedly authorized by the vote, required the disputed ballots to be submitted for his inspection, requested and obtained additional evidence as to the identity of the ballots submitted with those originally sealed in the ballot box, heard oral arguments and then dismissed the appeal. This proceeding pursuant to article 78 of the Civil Practice Act was then commenced, brought on before the Special Term and dismissed by order entered October 11, 1955. This appeal followed.

The respondent board of education contends for the finality of the commissioner's determination under section 2037 of the Education Law, providing that " All disputes concerning the validity of any district meeting or election or of any of the acts of the officers of such meeting or election shall be referred to the commissioner of education for determination and his decisions in the matter shall be final and not subject to review ". The question of finality under this section was left open by our decision in *Matter of Colson* v. *Allen* (285 App. Div. 797, 798), the opinion stating, " It is questionable whether, under this section, any judicial review of the commissioner's decision will lie but, in view of the cases holding that similar language in section 310 of the Education Law does not foreclose all review but permits review to the extent of determining whether the commissioner's interpretation of the underlying statutes was arbitrary or without rational basis (*Matter of Ross* v. *Wilson*, 284 App. Div. 522), we may assume for the purpose of this case that review to this limited extent is also permissible under section 2037 ".

Differing somewhat from the position of the respondent board of education, the respondent Commissioner of Education does not urge the application here of section 2037, but in discussing the more general provisions of section 310 states that, without conceding the soundness of the legal theory that the

commissioner's determinations may be reversed when found " purely arbitrary ", he is nevertheless content to accept this theory of limited review.

·Obviously, both respondents' contentions imply doubt as to whether the question of finality under section 2037 was directly passed upon and resolved in *Matter of Ross* v. *Wilson* (308 N. Y. 605) decided after our decision in *Matter of Colson* v. *Allen* (285 App. Div. 797, *supra*) and holding that there was " a total lack of power in the school district " to accept an offer of purchase less than the amount of another bona fide offer (p. 617). This language in the prevailing opinion was followed by the statement that " the commissioner's confirmation was thus, in a legal sense, purely arbitrary, and thus reviewable in court ".

However, the decision of this case does not require the determination of whatever question may remain as to the effectiveness of section 2037, as an examination of the merits satisfies us that the determination of the commissioner could not, in any event, be held purely arbitrary.

That the 29 disputed ballots were invalid is clear. That the remaining 1,100 ballots were valid and were properly counted is not controverted, by any factual statements at least. Thus the sole factual issue before the commissioner became the question whether the 29 disputed ballots produced for his inspection were the same 29 ballots cast, canvassed and rejected. An inspection of them discloses no evidence of any tampering. Their identity is attested by the affidavits of apparently reputable persons. To impeach them nothing is advanced except counsel's mere suggestion that they may be ballots cast at a previous election and the affidavit of one of the four inspectors, largely as to her " impression ", which affidavit is contradicted by those of the three other inspectors and, significantly enough, by this particular inspector's own certification that 29 blank or otherwise defective ballots were cast, counted and rejected. Upon such a state of the proof, we cannot denominate as purely arbitrary the commissioner's determination as to the ballots' identity and invalidity. Neither do we deem arbitrary his election to rest his decision upon the great mass of proof adduced in affidavit form and by other documents rather than to receive oral testimony as he was authorized to do by section 311 or subdivision 12 of section 2215 of the Education Law, such reception being permissive and discretionary under the rules of practice adopted pursuant to section 311.

From our conclusion as to the validity of the commissioner's determination that the 29 disputed ballots inspected by him were those properly rejected upon the canvass of the vote, it follows

that there was nothing arbitrary in the commissioner's treatment of the failure to comply with the provisions of subdivision 6 of section 2034 of the Education Law, respecting the safeguarding of the ballots, as a mere irregularity, harmless in its effect. Neither do we deem arbitrary the commissioner's rejection of appellant's claim that the form of the submission of the multiple proposition was defective in requiring a single affirmative or negative vote without opportunity to the voter to accept or reject one or more of the proposals into which the general proposition was subdivided or to write in an alternative. Certainly the commissioner's application of the principle of *Corbett* v. *Union Free School Dist., Hempstead* (199 Misc. 930, affd. 278 App. Div. 960) upholding the validity of a multiple proposition submitted in the same manner, could in no way be held arbitrary, considering the absence of any New York authority to the contrary or of any statutory inhibition and in view of the commissioner's broad power of statutory construction. (See *Matter of Colson* v. *Allen, supra,* and *Matter of Kieval* v. *Wilson,* 285 App. Div. 1203, appeal dismissed 1 N Y 2d 663.)

Contrary to appellant's contention, we find that the commissioner's decision and order sufficiently set forth his findings and the basis for them.

Appellant's remaining arguments relate to the procedure followed by the Special Term. We find untenable his contentions that issues of fact were raised which should have been tried (Civ. Prac. Act, § 1295) and that the issue of the existence of competent proof of all the facts necessary to the determination and the issue of preponderance of evidence were raised, and that, therefore, the proceeding should have been transferred to this court (Civ. Prac. Act, § 1296). The Special Term impliedly found, and properly so in our view, that " the pleadings and accompanying papers " (§ 1295, *supra*) raised no triable issue of fact. The question was whether the commissioner's determination was proper or purely arbitrary, upon the proof. The Special Term found it was not arbitrary and we have approved the finding. Subdivisions 6 and 7 of section 1296, cited by appellant, have no application as the determination was not " made as the result of a hearing held, and at which evidence was taken, pursuant to statutory direction ". No hearing of that nature was had and we have held that upon the facts here shown none was necessary. Further, of course, the question of preponderance of evidence (§ 1296, subd. 7) is in no way involved here. The question of the existence of any competent proof of all the facts necessary to the determination would, in

any event, be for our disposition on this appeal and an error on the part of the Special Term in failing to transfer the proceeding to this court would have been of no moment, as, under section 1296, such an error must be corrected here, as though the proceeding had reached this court by transfer rather than appeal.

The order should be affirmed, without costs.

FOSTER, P. J., BERGAN, COON and ZELLER, JJ., concur.

Order affirmed, without costs.