■ In the Matter of DELIUS E. WILSON, Appellant-Respondent, v FRANK MACCHIAROLA, as Chancellor of the City School District of the City of New York, et al., Respondents-Appellants.—In a proceeding pursuant to CPLR article 78 to review a determination denying tenure to the petitioner as a high school principal, the parties cross-appeal, by permission, from an order of the Supreme Court, Kings County, dated October 18, 1979, which, upon reargument, adhered to its original determination granting the petition to the extent of remanding the matter to the chancellor for a further evaluation of petitioner's tenure status. Order modified, on the law, by deleting therefrom the provision that the court adheres to its original determination and substituting therefor a provision vacating the court's order dated July 30, 1979. As so modified, order affirmed, without costs or disbursements, and matter remanded to Special Term for the sole purpose of conducting a hearing at which the petitioner may seek to prove that the constitutionally protected conduct in which he engaged was a substantial factor in the determination to deny him tenure. Petitioner Delius Wilson was appointed principal of Boys and Girls High School in Brooklyn (formerly Boys High School) on September 12, 1974. He had been appointed "acting principal" of the school in May, 1970 (where he had been serving as assistant principal), although he did not hold a formal principal's license. He was not issued a license until August, 1974, due in part to the Federal injunctions against the issuance of principal licenses in New York City for the years 1970 to 1974 (see *Chance v Board of Examiners*, 330 F Supp 203, affd 458

F2d 1167). At the time of Wilson's formal appointment in September, 1974, no supervisor in New York State was able to attain tenure status. Tenure for supervisors was abolished in May, 1971 (L 1971, ch 116). It was restored effective July 24, 1975 (Education Law, § 2573, subd 1, par [b], L 1975, ch 468, § 2). Wilson received favorable ratings during both the "acting" and formal periods of appointment and, in May, 1978, his immediate supervisor recommended him for tenure. Nonetheless, by letter from the chancellor dated July 18, 1978 Wilson was informed that the chancellor had determined not to grant him tenure as a principal. The letter also noted that Wilson was entitled to review of the determination. Wilson commenced this proceeding in which he alleged that the denial of tenure was in violation of his constitutional rights to free speech and equal protection, that the relevant statutes had been erroneously interpreted, and that the determination was arbitrary and capricious. The chancellor and board of education essentially maintained that the decision to deny tenure was a reasoned one based on a thorough review of petitioner's file as well as on consultation with subordinate personnel. Special Term granted the petition to the extent of remanding the matter to the chancellor and board "for such further proceedings as may be required to ensure that Dr. Wilson receives a fair and objective evaluation of his application for tenure". Special Term found the chancellor's decision arbitrary because it "could not have been predicated on a reasonable and deliberate examination of the records and performance of the Petitioner" in the relatively short time the chancellor had upon taking office to review the applications of the 500 probationary supervisors eligible for tenure. The determination was adhered to by Special Term upon reargument. Broad discretion is accorded boards of education in making tenure determinations, and they are not required to give the reasons for their decision to deny tenure (see, e.g., *James v Board of Educ.*, 37 NY2d 891; *Matter of Bergstein v Board of Educ.*, 34 NY2d 318, 323). Moreover, tenure may be denied despite the achievement of satisfactory ratings during the probationary period (see *Matter of Tischler v Board of Educ.*, 37 AD2d 261). In the present case, along with such ratings, the chancellor no doubt considered the rating of the school at which petitioner was principal for eight years. Near the end of that eighth year, the school was placed on one-year probation by the board of regents. The review procedures that the chancellor followed as set forth in the record herein are sufficient. A re-evaluation is not necessary. Petitioner's main contention on appeal is that he attained tenure by estoppel on September 11, 1977 because that was three years from the date he was appointed principal under a formal license or because he was entitled to prior credit pursuant to the Laws of 1975 (ch 469, § 1). The plain and unambiguous language of section 1 is that it pertains to "Any person who is a party to an individual contract with a board of education, which is in existence on the effective date of this act". There is no reason to assume, as petitioner does, that the Legislature meant other than what is said or that it thought all supervisors in the State had individual contracts. Petitioner was not employed under an individual contract but under a collective bargaining agreement. We note in this regard an incidental statement in the recent case of *Matter of Caraballo v Community School Bd. Dist. 3* (49 NY2d 488, 491), where a petitioner had served as principal of a school since 1972: "With the enactment of the supervisory tenure law (Education Law, § 2573, subd

1, par [b]), [petitioner] and other similarly situated school personnel could qualify for permanent appointment. [Petitioner] *thereupon* served [the] requisite three-year probationary term" [emphasis added]. In our view, "thereupon" refers to the date of the enactment of the statute, July 24, 1975. It is that date on which the petitioner in the instant case also commenced his three-year probationary term. In light of petitioner's claim that the tenure decision rested on a misinterpretation of a statute, direct resort to the courts was proper (see *Matter of O'Connor v Emerson*, 196 App Div 807, affd 232 NY 561; accord *Bailey v McDougall*, 66 Misc 2d 161). Therefore, we need not reach the issue of whether the doctrine of the exhaustion of administrative remedies could be raised for the first time on appeal. Petitioner also claims that underlying the decision to deny him tenure was the fact that he had supported programs and advocated measures that were unpopular with "representatives of * * * the Board of Education". Petitioner pointed to his chairmanship of the High School Principals' Caucus of the New York Association of Black Educators during 1977-1978, when he was a "vocal spokesman for the rights of black educators and minority pupils." He advocated "a number of controversial positions, including (1) monitoring of the Board of Education's compliance with the integration requirements of orders of the Federal Office of Civil Rights * * *; (2) establishment of an affirmative action program in the Board of Education's Office of Personnel and the appointment of a qualified black educator as head of such a program; [and] (3) equal pay for black principals serving in alternative schools in minority neighborhoods". Petitioner stated that on several occasions he was advised by representatives of the chancellor and board to " 'tone down' the vigor of [his] representation". Board representatives also indicated to him that they "held [him] responsible" for the "forceful positions" being taken by members of his school's parents association, i.e., at several public hearings conducted by the board some of the parents had strongly criticized the board's lack of support for programs for minority children in the Bedford Stuyvesant community, particularly for Boys and Girls High School. However wide the discretionary latitude may be in reaching a tenure determination, the determination must not violate a probationer's constitutional rights (e.g., *James v Board of Educ.*, 37 NY2d 891, *supra; Matter of Bergstein v Board of Educ.*, 34 NY2d 318, *supra; Matter of Tischler v Board of Educ.*, 37 AD2d 261, *supra*). Special Term did not address this claim. Petitioner must establish the truth of the allegations *and* that they were a substantial factor in the decision to deny him tenure (see *Mt. Healthy City Bd. of Educ. v Doyle*, 429 US 274, 286-287). We remand this matter to Special Term for the sole purpose of conducting a hearing at which petitioner may seek to prove the two requisite factors, to wit, that he engaged in constitutionally protected behavior that such behavior played a substantial part in the tenure decision. *If* petitioner so proves, but not before, the chancellor will have to come forward to show that he would have reached the same determination even in the absence of the exercise by petitioner of constitutionally protected conduct. Mollen, P. J., Titone, Lazer and Cohalan, JJ., concur.