OPINION OF THE COURT
William L. Underwood, Jr., J.
Petitioner brings a CPLR article 78 proceeding and a declaratory judgment action to annul and rescind the pre *292 sent contract of sale to sell two schools entered into between respondent Board of Education, Half Hollow Hills Central School District (hereinafter referred to as Board of Education) and corespondent Rostlee Associates, Ltd. (hereinafter referred to as Rostlee), and then to direct the Board of Education to submit the terms of sale contained in the aforesaid contract to the qualified voters of the school district at a referendum.
Petitioner, a member of the Board of Education, alleges that the said contract violates subdivisions 1 and 3 of section 402 and subdivision 11 of section 1709 of the Education Law in that a referendum was not held on the proposed sale. She also contends that respondent Board of Education “negotiated the sale to Rostlee in executive sessions” in violation of article 7 of the Public Officers Law. The Board of Education replies that “as a Central School District the respondent has the power under Section 1804(6)(c) of the Education Law to sell real property * * * without the approval of the voters unless certain requirements are met.” Said respondent also states that “discussions in Executive Session notwithstanding, a public meeting was held prior to the signing of any contract” and respondent did not violate the provisions of the Open Meetings Law. (Public Officers Law, § 95 et seq.)
FACTS
As an unfortunate facet of suburban life, there has been a decline in student enrollment in certain districts and boards of education have been forced to close schools and then sell the property. Consequently, boards of education have been able to obtain maximum utilization of the remaining schools and at the same time sell the vacant schools thereby returning the property to the tax rolls for the betterment of the residents of the school districts. The Board of Education in this case has attempted to sell two schools because of a decline in student enrollment.
One of these properties is situated in the Town of Huntington, New York, and consists of an elementary school (New Hills School) located on 15 acres and built in 1974 by the district. Adjacent and contiguous to the New Hills School is the Old Hills School, built by Union Free School *293 District No. 16, Towns of Huntington and Babylon, Suffolk County, New York, prior to July 1, 1954, the date of centralization of Union Free School District No. 16 into what is now known as the Half Hollow Hills Central School District, Towns of Huntington and Babylon, Suffolk County, New York. The Old Hills School required extensive repairs and was closed in 1974. The New Hills School was closed in 1980 because of a declining student enrollment. It is further noted that the bonded indebtedness on the Old Hills School was retired some 11 years ago. The president of the Board of Education stated that the bonded indebtedness of the New Hills School will not be retired until 1996 “however, the proceeds of this sale and the amortization payments provided for under the purchase money mortgage to be undertaken by Rostlee Associates, Ltd. will provide the regular payments of the debt service and ultimate retirement of this obligation”.
Three referendums were held to sell the schools at various prices. The referendums passed and unfortunately for the residents of the school district, there were no buyers.
On December 22,1980 the Board of Education went into executive session to discuss personnel items and real estate matters which included the New Hills School. Petitioner voted for the recess to executive session for this purpose. A determination was made on that date that each member of the Board of Education would appoint a member from the community to serve on an advisory committee to sell the New Hills School.
On March 30, 1981, after some preliminary discussion and negotiation, a motion was made and carried unanimously to accept an offer of purchase from a Donald Par-trick for the Old and New Hills Schools in the amount of $2,000,000. Additionally there was unanimous approval of the legal notice authorizing the submission of Proposition No. 5 on the May 20, 1981 annual budget and election. Then on May 21, 1981 Proposition No. 5 was submitted to the voters as follows: “resolved, that the Board of Education be authorized to sell publicly or privately not later than June 30,1983, certain real property commonly known as the new hills school located at Half Hollow Road, Dix Hills and the old hills school located at Deer Park *294 Avenue, Dix Hills, New York at a price of two million ($2,000,000.00) DOLLARS.”
The proposition passed.
Although the voters approved the sale of this property for $2,000,000, the prospective purchaser, Donald Partrick, withdrew his offer some two days after the vote.
The Board of Education thereafter continued their efforts to sell the schools and discussed several proposals for the purchase of this property, and the financial capabilities of those making these proposals. Most of the discussions were held in executive session allegedly to protect the integrity of the offers and to secure for the people of the district the best possible financial return for this property.
On November 2, 1981, a motion was made by petitioner that any acceptable proposal for the purchase of this property be offered for approval at public referendum although the sale as previously noted had been approved by referendum at $2,000,000 on May 20, 1981. Her motion was defeated.
Thereafter, on November 23, 1981, in open meeting, a motion was made to approve the sale of the New and Old Hills Schools to Rostlee, in the amount of $2,073,000, the highest offer obtained at the negotiations and to proceed with further negotiations regarding payment. A community hearing was scheduled for December 14, 1981 at the high school east lecture hall. The motion was carried five to one.
At the meeting of December 7, 1981 a resolution was passed approving an addition to the rider of the proposed contract. This rider was designed to hold the prospective purchaser to the terms of the contract while the Board of Education made an inquiry as to community acceptability of the proposal. This inquiry was carried by a majority vote of the board.
Then on December 14, 1981, a public meeting was held and the president of the Board of Education made a statement giving the background of the proposed sale and proposed terms of the contract. Jeffrey Rosenberg, an attorney and principal of Rostlee, told the audience of the anticipated use of the building as a medical center-clinic. *295 He also answered questions by those in attendance. Some of those in attendance also made statements on the proposed sale.
Thereafter, there was further discussions between the Board of Education and Rostlee relative to the amount of down payment on contract signing, covenants and restrictions and restrictions on use of the property under the appropriate zoning ordinance. These items were discussed and the proposed changes incorporated in a resolution which passed by a five to two vote. Petitioner voted “no”. The Board of Education authorized the president and/or the vice-president to sign the contract as amended.
On January 25,1982 at a district meeting, the petitioner stated upon the minutes of that meeting her- position with regard to the Rostlee sale, and the effect of the clauses restricting the use of the premises to be sold.
THE LAW
I
At the outset, under the facts presented, petitioner can bring this lawsuit, notwithstanding the language of section 310 of the Education Law. (Matter of Wilson v Macchiarola, 79 AD2d 638; Matter of O’Connor v Emerson, 196 App Div 807, affd 232 NY 561; Board of Educ. v Rickard, 32 AD2d 135; Matter of Tombler v Board of Educ., 109 Misc 2d 821.)
In the O’Connor case (196 App Div 807, 810, supra) the court used language which could be applied to this case, as follows: “But where the right of a party depends upon the interpretation of a statute and it is claimed that a school board or official has proceeded to act in violation of an express statute, and thereby the party complaining is being deprived of valuable rights, the courts will not be ousted of jurisdiction to determine the matter, notwithstanding another method of settling the controversy has been provided.”
This lawsuit depends upon interpretation of several statutes of the Education Law and it is claimed that respondent Board of Education “has proceeded to act in violation of an express statute”. Therefore, this court has jurisdiction to decide the issues presented.
*296 II
We now turn to the merits of the lawsuit. Petitioner frames two issues for the court to decide. She states:
“(a) whether the Board is required by statute to submit the terms and conditions of the proposed sale to the electorate of the school district for approval.
“(b) whether the Board violated the provisions of the Open Meetings Law in discussing amongst themselves and with the proposed purchasers the sale of school district property in executive session, which discussions eventually resulted in a contract of sale.”
III
A
Petitioner relies upon section 402 and subdivision 11 of section 1709 of the Education Law to support her position that “the failure and refusal of the Board to submit for voter approval by referendum the price and terms of sale of the subject property is illegal”.
Subdivision 1 of section 402 of the Education Law states, in pertinent part, that “[w]henever the site of a schoolhouse shall have been changed * * * the inhabitants of a district entitled to vote * * * shall have power, by a majority * * * to direct the sale of the former site or lot, and the buildings thereon and appurtenances or any part thereof, at such price and upon such terms as they shall deem proper”.
Subdivision 11 of section 1709 of the Education Law states, in pertinent part, that “[t]he said board of education of every union free school district shall have power, and it shall be its duty: * * * [t]o sell, when authorized by a vote * * * any former school site or lot, or any real estate the title to which is vested in the board, and the buildings thereon, and appurtenances or any part thereof, at such price and upon such terms as said voters shall prescribe”.
B
The Board of Education counters that a referendum is not required and it relies on section 1804 (subd 6, par c) of the Education Law. This section states, in relevant part, that “the board of education of a central school district *297 may, by resolution, after a period of at least seven years of centralization, sell any piece of real property which such board shall deem to be of no use or value therefor.”
C
Petitioner then sets forth her points of attack to try to establish that section 1804 (subd 6, par c) of the Education Law does not mean what it says. Petitioner states that “Section 1804 (6) (c) is merely part of a broad statutory scheme relating to the sale of school district property, and that an examination in detail of all appropriate and relevant statutes, as well as the history and purpose of the subdivision, is required to ascertain its true meaning, purpose and intent.” (Petitioner cites McKinney’s Cons Laws of NY, Book 1, Statutes, §§ 96, 97, 111 and 129; see, however, § 76.) Petitioner states “when the whole statutory plan is examined in its totality, under the scrutiny of purpose and need, under the interpretation of those charged with the statutory duty of enforcement, it becomes clear that the words 'any piece’ [in Education Law, § 1804, subd 6, par c-author] refer to former existing constituent district property only and they do not refer or include central district property.”
In support of this statement, petitioner states that subdivision 1 of section 1804 and section 1805 of the Education Law provide that a central school district board of education shall have the same powers and duties as boards of education in union free school and subdivision 11 of section 1709 provides that the board of education of every union free school district shall have the power to sell, by referendum any former school site or lot. (See, also, Education Law, § 1804, subd 5, par a; subd 6, pars a, b.)
Petitioner also cites the legislative memorandum of Assemblyman Leasure who introduced the bill concerning section 1804 (subd 6, par c) of the Education Law and State Comptroller’s Opinion Nos. 73-114 and 79-879 to support her contention that a referendum is required when a school district sells a former school. Finally, petitioner cites two letters from Robert D. Stone, counsel to the Commissioner of Education, dated April 28, 1972 and July 10, 1975 recommending approval of section 1804 (subd 6, par c) of *298 the Education Law and its subsequent amendment. The letters contain his interpretation of the section.
D
This conflict is not easily resolved and respondent Board of Education sets forth its reasons why section 1804 (subd 6, par c) of the Education Law governs the sale of a former school by a board of education of a central school district. Respondent counters that Assemblyman Leasure’s legislative memorandum, Robert D. Stone’s letter dated April 28, 1972 and Comptroller Opinion No. 73-114, all concerned section 1804 (subd 6, par c) of the Education Law as it was written in 1972 and not the current section which was amended in 1975. Respondent also contends that Comptroller Opinion No. 79-879 makes reference to an unreported opinion of the Comptroller dated 1973 and that the opinion is incorrect because again section 1804 (subd 6, par c) of the Education Law was amended in 1975.
The Board of Education then seeks to “unravel the complications presented by Petitioner” concerning section 1804 (subd 6, par c) of the Education Law. The Board of Education states “when the original sec. 1804 (6) (c) was enacted, the only way a central district board of education could dispose of district property without a referendum was pursuant to Sec. 1804 (6) (a) which provided for the disposition of existing constituent district property by a central board without voter approval five years after discontinuance of its use as a school.” Respondent alleges that what was meant by “any piece of real property” in the original section 1804 (subd 6, par c) was not critical “because it was not clear whether the statute gave a central district board any more power than that which was already conferred upon it by the above-mentioned statutes.”
The Board of Education contends that because of this ambiguity, the Legislature amended section 1804 (subd 6, par c) of the Education Law (L 1975, ch 855). They state that the amendment made two significant changes in that, “it expressly conferred the power of sale upon the board of education instead of the district and it conferred that power subject to a permissive referendum.” (See, also, Assemblyman McCabe’s sponsoring memorandum, NY Legis Ann, 1975, p 172.)
*299 The Board of Education also states, that petitioner is incorrect when she argues that section 1804 (subd 6, par c) of the Education Law only permits a sale of “existing constituent district property” because “sec. 1804 (6) (a) already confers the power of sale without voter approval as to existing constituent district property” and if section 1804 (subd 6, par c) “does not mean what it says” then “what purpose would it serve?” In other words, section 1804 (subd 6, par c) “would be completely unnecessary.” The Board of Education sums up its argument on this point and alleges “being mindful of a distinction between existing constituent district property and property acquired after centralization, it is self-evident that if the Legislature intended to distinguish the phrase ‘any piece of real property’ in Sec. 1804 (6) (c), it would have explicitly done so as it had in Sec. 1804 (6) (a). If such a distinction had been intended, the Legislature would not have employed imprecise language susceptible of misinterpretation and subject to speculation.”
The court has carefully reviewed the two sections in question and the various documents submitted by each side, and determines that under the facts presented, the respondent Board of Education may sell any piece of real property without a referendum unless it receives a proper petition. (Education Law, § 1804, subd 6, par c.) Section 1804 (subd 6, par c) of the Education Law means what it says and if the Legislature wanted a board of education of a central school district to sell real property only after a referendum then it could so provide in clear and concise language.
IV
Petitioner’s second point of attack is that the credit provisions of subdivision 3 of section 402 of the Education Law mandate a referendum. Subdivision 3 of section 402 of the Education Law states, in pertinent part, “[w]hen a credit shall be directed to be given upon such sale for the consideration money, or any part thereof, the trustees are hereby authorized to take in their corporate name such security by bond and mortgage, or otherwise, for the payment thereof”.
*300 In support of her contention, petitioner cites the unreported decision of the Commissioner of Education in Matter of Young (No. 10,755, Feb. 17, 1982) and State Comptroller’s Opinion No. 79-718 to the effect that if a school district takes back a purchase-money mortgage it must hold a referendum.
The Board of Education replies that subdivision 1 of section 402 of the Education Law states at the beginning, “[w]henever the site of a schoolhouse shall have been changed” and that this language should be read in connection with the language of subdivision 3 which states “[w]hen a credit shall be directed to be given upon such sale”. The Board of Education submits that “the site of a schoolhouse is not being changed in the instant case and the credit provisions of subdivision 3 do not apply.” (See, also, Matter of Ross v Wilson, 308 NY 605.) In fact, the Appellate Division in the Ross case (284 App Div 522, 530) remarked that the above phrase “can be liberally construed to cover the case of the shifting of education in the elementary grades from the schoolhouse of a common school district to a new building in a central school district.” In the instant case, there is no “shifting of education” because the subject schools were closed due to a lack in student enrollment and extensive repair work.
Finally, the Board of Education states that “a determination by this Court that Respondent Board may sell district property subject only to a permissive referendum in accordance with Section 1804 (6) (c) will effectively moot the issue respecting the credit provision of section 402 (3)”, and it need not decide this issue in view of the holding concerning section 1804 (subd 6, par c) of the Education Law (see part III). In other words, the court agrees that this issue is rendered moot.
V
 Petitioner’s third point is that respondent board failed to comply with the provisions of the Open Meetings Law. (Public Officers Law, § 95 et seq.)
Subdivision (a) of section 98 of the Public Officers Law makes the general laudable statement that “[e]very meeting of a public body shall be open to the general public, *301 except that an executive session of such body may be called and business transacted thereat”.
Section 100 (subd 1, par h) of the Public Officers Law states in part that “[u]pon a majority vote of its total membership, taken in an open meeting pursuant to a motion identifying the general area or areas of the subject or subjects to be considered, a public body may conduct an executive session for the below enumerated purposes only * * * the proposed acquisition, sale or lease of real property * * * but only when publicity would substantially affect the value thereof.”
Petitioner states that “respondents own exhibits portray a continuous course of conduct violative of these provisions in that appropriate resolutions were not adopted to go into executive session and that the sessions had no relevancy to price.” Petitioner cites Matter of Oneonta Star Div. of Ottaway Newspapers v Board of Trustees of Oneonta School Dist. (66 AD2d 51), Matter of Orange County Pub., Div. of Ottaway Newspapers v Council of City of Newburgh (60 AD2d 409, affd 45 NY2d 947), Devitt v Heimbach (109 Misc 2d 463) and Matter of Sanna v Lindenhurst Board of Educ. (107 Misc 2d 267, mod 85 AD2d 157).
Respondent, of course, denies that it violated the provisions of the Open Meetings Law. The court has previously set forth the events leading up to the executive session and thereafter the public meeting held on December 14, 1981. Respondent has furnished the record of the meetings of the Board of Education.
The court has reviewed the proceedings of respondent concerning the sale of the two former schools to respondent Rostlee Associates, Ltd., and determines that the Board of Education did not violate the provisions of the Open Meetings Law (Public Officers Law, § 100, subd 1, par h; § 102; Devitt v Heimbach, 109 Misc 2d 463, supra; see, also, Matter of New York Univ. v Whalen, 46 NY2d 734). In view of the fact that the Board of Education did not violate the provisions of the Open Meetings Law, this court does not have to consider the “appropriate sanction” of an award of counsel fees to petitioner. (Matter of Sanna v Lindenhurst Bd. of Educ., 85 AD2d 157, 159-160, supra.)
*302 VI
Finally, this court would be remiss if it did not mention Rostlee’s arguments to dismiss the petition. Rostlee “joins in the positions asserted in the ‘Respondent Board’s Memorandum of Law’ ” and it also alleges that petitioner fails to make the necessary showing to justify the relief of mandamus or prohibition. (Forte v Supreme Ct. of State of N. Y., 48 NY2d 179; Matter of Andresen v Rice, 277 NY 271; Matter of De Lia v McMorran, 56 Misc 2d 205.)
Rostlee states that “the question of whether the Board violated the Public Officers Law would seem to be based upon a determination particularly factual in nature (i.e. was the value of the real estate or the real estate deal which the Board was considering likely to be diminished by publicity)”. Rostlee continues that “the courts are particularly hesitant to overturn administrative determinations of fact unless they find those determinations to be arbitrary and capricious.” Rostlee, of course, contends that the Board of Education’s decision was not arbitrary and capricious.
Rostlee also alleges that “almost the entirety of Petitioner’s Memorandum of Law and Supplemental Affidavit of Mr. Loew are dedicated to regurgitating purported legislative history justifying their interpretation of Education Law sec. 1804 (6) (c) and attempting to lay out the statutory framework in support of their position that a public referendum was necessary to sell the Hills Property despite the declarations of 1804 (6) (c) on its face. If Petitioner is correct, the right Petitioner alleges is by no means clear and mandamus will issue only where there is a clear legal right to the relief sought.” (Matter of Sullivan v Siebert, 70 AD2d 975; Matter of Izzo v Kirby, 56 Misc 2d 131.)
CONCLUSION
The court after careful consideration of the arguments of the parties, the excellent memoranda of law and supporting documents, determines that this Board of Education can sell any piece of real property without a referendum. Additionally, the Board of Education did not violate the provisions of the Open Meetings Law.
*303 Accordingly, petitioner’s CPLR article 78 proceeding is dismissed and her application for a declaratory judgment is determined as above indicated.